GERTRUDE MIDDLEMAN, Doing Business as MIDDLEMAN & MIDDLEMAN, Plaintiff, *v.* ELIAS PRESS, INC., Defendant.

City Court of the City of New York, March 25, 1925.

Usury — action to recover compensation for services in procuring loan for corporation — answer set up illegality of alleged contract under General Business Law, § 380, providing for charges broker may make for procuring loans — plaintiff was to receive $500 for procuring loan of $2,500 — General Business Law, § 380, in nature, is statute against usury and unavailing to defendant corporation — plaintiff's motion for summary judgment denied where defendant's affidavits raise issue of fact.

Section 380 of the General Business Law, which provides for the charges which a broker may take or receive in procuring a loan, is in the nature of a usury statute and as such is not available to a corporation as a defense.

Accordingly, plaintiff's motion to strike out the separate defense in defendant's answer, in an action to recover $500 compensation for services in procuring a loan amounting to $2,500 for the defendant corporation, should be granted, where it appears that said defense set up the illegality of the alleged contract under section 380 of the General Business Law.

Plaintiff's motion for summary judgment will be denied, where the affidavits submitted in opposition to said motion raise an issue of fact for the jury.

ACTION by a broker to recover compensation for services in obtaining a loan for the defendant corporation in which the defendant sets up the defense of a violation of section 380 of the General Business Law, providing for the charges a broker may make for procuring a loan.

*Jay Leo Rothschild,* for the plaintiff.

*Seligsberg & Lewis,* for the defendant.

SHIENTAG, J.:

Plaintiff, a broker, sues for compensation for services alleged to have been rendered in obtaining a loan for the defendant corporation. The complaint alleges that on or about November 14, 1924,

the defendant employed the plaintiff to obtain a loan of $2,500 for a period of twelve months, to be paid in twelve equal monthly installments, as security for which defendant agreed to give a chattel mortgage on its plant and to pay the plaintiff as compensation for her services the sum of $500. It is further alleged that plaintiff procured a party ready, willing and able to make the loan on the terms and conditions mentioned, but that defendant declined to accept the same. The answer is a general denial and contains a separate defense, setting up the illegality of the alleged contract under section 380 of the General Business Law, which provides as follows: " No person shall, directly or indirectly, take or receive more than fifty cents for a brokerage, soliciting, driving or procuring the loan or forbearance of one hundred dollars, and in that proportion for a greater or less sum, except loans on real estate security; nor more than thirty-eight cents for making or renewing any bond, bill, note or other security given for such loan or forbearance, or for any counter bond, bill, note or other security concerning the same." Plaintiff makes two motions: *First*, to strike out the separate defense upon the theory that section 380 of the General Business Law is a usury law and that a corporation may not avail itself of that section as a defense. The plaintiff's second motion is for summary judgment. The defendant moves for judgment on the pleadings. There will first be taken up the motion to strike out the affirmative defense. In considering whether or not section 380 of the General Business Law is in the nature of a usury statute, we are led in the first instance to inquire into what is known as the legislative intent in enacting that section. In his introduction to " The Nature of the Judicial Process," Judge BENJAMIN N. CARDOZO says: " Interpretation is often spoken of as if it were nothing, but the search and the discovery of a meaning which, however obscure and latent, had none the less a real and ascertainable pre-existence in the legislator's mind. The process is, indeed, that at times, but it is often something more. The ascertainment of intention may be the least of a judge's troubles in ascribing meaning to a statute. ' The fact is,' says Gray in his lectures on the ' Nature and Sources of the Law,' ' that the difficulties of so-called interpretation arise when the Legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the Legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present.' " (pp. 14, 15.) In the recent case of *Matthews* v. *Matthews* (240 N. Y. 28) the court said that it was its duty to avoid a construction of a statute which raises grave and doubtful constitutional questions,

if the statute can reasonably be construed so as to avoid such questions. And in the same case the court went on to say: " ' In the exposition of statutes, the established rule is that the intention of the lawmaker is to be deduced from a view of the whole statute, and every material part of the same; and where there are several statutes relating to the same subject, they are all to be taken together, and one part compared with another in the construction of any one of the material provisions, because, in the absence of contradictory or inconsistent provisions, they are supposed to have the same object and as pertaining to the same system. Resort may be had to every part of a statute, or, where there is more than one *in pari materia,* to the whole system, for the purpose of collecting the legislative intention, which is the important inquiry in all cases where provisions are ambiguous or inconsistent.' " (*Kohlsaat* v. *Murphy,* 96 U. S. 153, 159; *New Lamp Chimney Co.* v. *Ansonia Brass & Copper Co.,* 91 id. 656, 662.) " ' In construing a statute we have a right to consider conditions existing when it was adopted, and which it must be assumed the Legislature intended to meet, and also other statutes relating to the same subject.' " (*Bull* v. *N. Y. City R. Co.,* 192 N. Y. 361, 372.) Having the foregoing principles in mind, we find that the history of section 380 of the General Business Law is clearly traced in the case of *Corp* v. *Brown* (2 Sandf. 293), where the court said: " We have traced this section to its origin, and our researches have satisfied us, that the intention of the Legislature never was to allow a broker the inordinate compensation here claimed. Previous to the last revision of our statutes, this provision was found in the ' Act for preventing usury.' (1 R. L. 63, § 3.) In England, it is first found in the ' Act against usury.' (21 James I, ch. 17; 2 Evans' Stat. 285.) Next in 12 Chas. II, ch. 13; and in 12 Anne, ch. 16. (2 Evans' Stat. 286, 287.) From these sources they were transferred to our act for preventing usury, passed 8th February, 1787. The revisers have not explained why they removed it from the Usury Act. They must have thought it more appropriately came under their title ' Of brokerage, stockjobbing and pawnbrokers.' Still, we may look to the place and the company in which this provision was *first* found, and so long afterwards continued, for a key to the intention of the Legislature in respect to it." The court continued: " The statute was passed evidently for the benefit of borrowers; to prevent the lender from practically evading the Usury Act, by interposing his broker between himself and the victim of his cupidity. Its object was to fix a limit beyond which the broker should not charge." Two years after the foregoing decision was rendered and while the present section 380 of the General Business Law was

included in that part of the Revised Statutes entitled " Of brokerage, stock-jobbing and pawn-brokers," a law was enacted, chapter 172 of the Laws of 1850, section 1, which is now section 374 of the General Business Law, providing that no corporation should thereafter interpose the defense of usury in any action. In 1909 section 380 of the General Business Law, relating to charges to be made by brokers for loans, was again placed in the same article as the general usury statute under the head of " Interest and Usury." (General Business Law, art. 25.) Having in mind the history of section 380 of the General Business Law, the interpretation placed upon it by the court at a comparatively early date, the purpose of the amendment of 1850 designed to prohibit a corporation from interposing the defense of usury and the present position of this section in that article of the General Business Law which deals with interest and usury, the conclusion is irresistible that this section is in the nature of a usury statute, and as such cannot be used by a corporation as a defense. The motion to strike out the separate defense is granted, and as a consequence the defendant's motion for judgment on the pleadings must be denied. The plaintiff's motion for summary judgment is denied. The affidavits submitted in opposition to the motion raise an issue of fact as to the authority of the president and treasurer to bind the defendant corporation by a loan of this kind to be secured by a chattel mortgage on the corporation's assets. Orders signed.