William A. **WEGMANN**, Appellant,

v.

Nicholas **MANNINO** et al., Appellees.

No. 16720.

United States Court of Appeals
Fifth Circuit.

April 2, 1958.

Rehearing Denied May 19, 1958.

Howard P. Rives, Clearwater, Fla., for appellant.

Wm. C. McLean, Tampa, Fla., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment dismissing appellant's suit for specific performance of a contract involving the development and sale of a subdivision on the ground that appellant had failed to register as a real estate broker under the Florida law.

In his brief here appellant does not dispute the legal conclusion that if his contract required him to perform acts which under the Florida statute would make him a real estate broker, then the contract would be void. Both parties proceed on the assumption that the failure of a person who engages in such activities without obtaining a broker's license is denied the right to recover compensation earned by the doing of such prohibited acts. This is doubtless due

to the express terms of the statute making such commissions uncollectible and also to a recognition by appellant as well as appellees that the real estate brokers' statute is designed to effectuate an important public policy in Florida that would place real estate brokers under the strictest possible regulation; that only qualified persons of good character should be permitted to qualify; and that the public interest requires that violations of the statute be penalized not only as criminal acts of the misdemeanor class, but also by a forfeiture of the commission. That this is a proper exercise of the police power of the state has been

expressly held by the Florida Supreme Court in State ex rel. Davis v. Rose, 97 Fla. 710, 122 So. 225.

Appellant does not cite a single Florida case to aid us in determining whether his contract is a contract which requires him to perform the acts of a real estate broker. We must therefore look to the exact terms of the agreement and compare them with the language of the statute.[1]

The complaint alleged that appellant and appellees had entered into a contract under the terms of which the appellees were to purchase 68 acres of land, and

[1]. Applicable portions of section 475.01, Florida Statutes, F.S.A.

"(1) This chapter may be referred to in any legal proceeding as the 'Real Estate License Law.'

"(2) Every person who shall, in this state, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraise, auction, sell, exchange, buy or rent, or offer, attempt or agree, to appraise, auction or negotiate the sale, exchange, purchase or rental of any real property, or any interest in or concerning the same, including mineral rights or leases; or who shall advertise or hold out to the public by any oral or printed solicitation or representation that such person is engaged in the business of appraising, auctioning, buying, selling, exchanging, leasing or renting real estate, or interests therein, including mineral rights or leases, of others; and every person who shall take any part in the procuring of sellers, purchasers, lessors or lessees of the real property, or interests therein, including mineral rights or leases, of another; or who shall direct or assist in the procuring of prospects, or in the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who shall receive, expect, or be promised any compensation or valuable consideration, directly or indirectly therefor; and all persons who are members of partnerships or officers or directors of corporations engaged in performing any of the aforesaid acts or services; each and every such person shall be deemed and held to be be a 'real estate broker' or a 'real estate saleman,' as hereinafter classified,

unless said person when performing the act or acts herein specified shall be acting as an attorney-in-fact for the purpose of the execution of contracts or conveyances only, or as an attorney-at-law within the scope of his duties as such, or when acting as the administrator, executor, receiver, trustee, or master under or by virtue of an appointment by will or by order of a court of competent jurisdiction, or as trustee under a deed of trust, or under a trust agreement, the ultimate purpose and intent whereof shall be charitable, philanthropic, or providing for those having a natural right to the bounty of the donor or trustor; nor shall the term broker or salesman be applied to a person who shall deal with property in which he is a part owner, unless said person shall receive a larger share of the proceeds or profits from the transaction than his proportional investment therein would otherwise justify, such excess share being directly or indirectly the result of the service of buying, selling, exchanging, or leasing said property; nor shall said terms be applied to one officer of every corporation engaged in the sale of its own properties who shall be its president unless otherwise provided in its charter or by-laws, if said corporation shall not otherwise be classed as a real estate broker or a salesman. * * *"

Applicable portions of Section 475.41, Florida Statutes, F.S.A.:

"No contract for a commission or compensation for any act or service enumerated in subsection (2) of § 475.01 shall be valid unless the broker or salesman shall have complied with this chapter in regard to registration and renewal of the certificate at the time the act or service was performed."

appellant, "as agent" was to perform the following services:

"1. Immediately after the land is purchased, the Agent will have the land laid out into lots, the size of which will be designated by the Owner. All surveys, water, sewer, and street improvements will be made at the direction and supervision of the Agent.

"2. Upon the completion of the surveys the Agent will set up a field office, employ suitable help, salesmen, or brokers, set up signs, advertise and sell the lots; all of the expenses for the items set forth in this paragraph shall be paid for by the Agent.

"3. All costs for surveys, sewer, water, plotting out lots, and streets will be paid for by the Owner as they accrue.

"4. The Owner shall set the prices for all lots, down payments required, and terms of sale and said prices shall continue to be in effect until the total price of the land is paid for by the Owner. When the total price of the land is paid for, the prices shall be set by the mutual consent of the parties.

"5. All agreements of sale, contracts and forms will be prepared by the Owner and used by the Agent.

"6. The Agent shall immediately upon the sale of the lots send copies of all papers pertaining to said sale together with any and all moneys received to the Owner; and the Agent hereby agrees to allow the Owner to inspect and examine any and all records or papers pertaining to the business.

"7. The Agent agrees to personally or through qualified representation perform all of the duties and obligations of this agreement during the term thereof, which shall continue until all of the lots are sold, and *shall be personally responsible for the operation and conduct of the business of selling, supervising, and performing the obligations* of this agreement until completion." [2] (Emphasis added.)

2. Other provisions of the contract that are of significance are:

"8. The Agent will be paid a total of 25% of the Net Profit of the Owner. Net profit shall be that amount of money made by the Owner after deducting the cost of the land, survey expenses, fees, taxes, interest on mortgages, cost of installing water, sewer and street improvements, conveyancing expenses.

\* \* \* \* \*

"10. If the agent breaches any of the conditions or obligations of this agreement, or *does not operate and supervise the sale of the lots* in a diligent manner, the Owner may immediately discontinue the services of the said Agent and the Agent shall forfeit any and all moneys which may be due him for lots already sold, or about to be sold, and the Owner shall retain said moneys as liquidated damages. This will not preclude the owner from recovering from the Agent any other actual damages sustained by him. (Emphasis added.)

"11. The Agent will at all times operate the business in accordance with the Laws of the State of Florida and the local rules and regulations as prescribed.

"12. This agreement and its performance shall not be held or construed, as to either party, to be, or to constitute an agency agreement, in any manner, or respect, except that the agent shall be authorized to perform the duties and obligations herein contained and the Agent warrants that he will not exceed any of the authority herein contained.

"13. The agent shall for all expenses incurred in advertising and operation of his office on or off the premises contract all bills in his own name and shall so advise all persons he associates with for these purposes.

"14. The Owner cannot hire or employ any other Agent, salesman or broker to sell, manage, or perform in the operation of the business so long as the Agent herein performs all of the duties and obligations of this agreement.

"15. The Owner shall have the right to sell, transfer, or assign any of its right, title, or interest respecting the land or profits or any interest under this agreement. The Agent shall have the right to sell, transfer, or assign any of his right, title or interest respecting the land of profits or any interest under this

Appellant makes five contentions in assigning error to the judgment of the trial court:

"1. That the Court erred in finding that the contract between the Appellant and the Appellees violated Section 475.01 of the Florida statutes and was voided and unenforceable under prohibition of Section 475.41.

"2. The Court erred in failing to find that the terms of said contract were sufficient to show an agreement of Joint Venture.

"3. The Court erred in ruling that Appellant was barred as a matter of law from recovery for services rendered and performed other than sale or sales supervision.

"4. The Court erred in failing to find that Appellant's contract was sufficient to show an ownership in the property, thereby making said contract an exception to Section 475.01 of the Florida statutes.

"5. The Court erred in denying unto Appellant a Quantum Meruit Recovery and Equitable Relief."

■ First, as to the first contention, as we have stated above, appellant impliedly recognizes that if the contract between appellant and appellees violated Section 475.01 of the Florida Statutes, it would be void and unenforceable. In his complaint appellant alleges that he had partially complied with his obligations under the contract and that "during the period of *plaintiff's development and sales effort* lots in Harbor View Villas subdivision have been sold by him in the aggregate amount of approximately $25,000." (Emphasis added.) Upon the trial of the case below the plaintiff introduced evidence which the court said "established his cause of action * * * sufficiently to shift the burden to the defendants to show plaintiff's failure to perform or a breach by the plaintiff of the conditions of the agree-

ment so as to preclude the summary dismissal of his complaint." The court thereupon found, however, that "the services required of plaintiff under the agreement are for those acts or services enumerated in subsection 2 of Section 475.01, Florida Statutes, which are rendered invalid by Section 475.41, Florida Statutes, unless the plaintiff shall have complied with * * * (Chapter 475 Florida Statutes)" in that he had not registered either as a real estate broker or salesman.

We think it plain that this finding by the trial court is correct in that it is clear that appellant did "for a compensation or valuable consideration directly or indirectly paid or promised" agree to "sell * * * offer * * * or negotiate the sale of any real property" and "advertise or hold out to the public * * * that he (was) engaged in the business of * * * selling * * * real estate * * * of others." And further that he agreed to "direct or assist in procuring of prospects, or the negotiation or closing of * * * transaction(s) which does or is calculated to result in a sale, exchange or leasing thereof." It furthermore appears that the compensation which appellant was to receive under his contract was for the performance of such services and that under the terms of Section 475.41 no such contract for compensation is valid.

The fact that appellant was permitted to hire salesmen and brokers who themselves might be legally licensed persons does not change the fact that his entire contract was to supervise and control the subdividing, advertising and selling of a subdivision which the statute prohibited to all but licensed persons.

■ The second and fourth grounds for appeal are considered together. Appellant contends that the Court erred in failing to find that the terms of the contract were sufficient to show an agreement of joint venture. If the con-

agreement. However, the Agent shall not have the right to assign or transfer any of his duties and obligations to per-

form the service as set forth and designated in this agreement."

tract could be construed as constituting the parties joint adventurers this would not of itself avail appellant anything, because the statute makes no exception as to joint ventures as such; but, says appellant, if this is a joint venture, then this would make appellant an "owner" of the property and an owner is exempt under Section 475.01, supra, footnote 1. We think there is no magic in the term "joint venture." This may or may not be one, but whether it is or not is not decisive of anything. No case is cited to the effect that every joint venture as to the sale of real estate makes of the joint venturers joint owners of the real estate. Such a contention must not only be made but it must be supported if appellant is to have any comfort from it. The only case cited by appellant on this point is Bowling v. National Convoy & Trucking Co., 101 Fla. 634, 135 So. 541, which deals only with an agency coupled with an interest. This has no bearing on whether appellant at the time he performed the acts was "a person who shall deal with property in which he is a part owner" as contemplated by the statute.

The two remaining contentions are that the court should have construed the contract as a lawful agreement to do the things he could do without a broker's license even though other acts were illegal and that in any event he should be permitted to recover on a quantum meruit. The weakness of this contention is indicated in that appellant refers us to no Florida case that supports the theory that such a contract can be broken into its legal and illegal parts. He cites Ireland v. Craggs, 5 Cir., 56 F.2d 785, 787, for the proposition that:

> "When one who has obtained the benefit of an agreement invokes the defense of illegality, the Court will not allow the defense unless the public interest involved in the asserted ground of defense outweighs the principle that one who has obtained the benefits of an agreement should not escape its burdens."

Reference to this case shows that it is not applicable because we there stated:

> "There is no Florida statute which denounces as illegal contracts like the one pleaded."

Such is not the case here. The statute expressly prohibits what the appellant here undertook to do and provides criminal sanctions for violating the prohibition. No part of such a contract can be the basis of a cause of action since the agreement here was indivisible in that it is impossible for the court to find that any part of the agreement would remain if the illegal part were to be stricken. So, too, as to the quantum meruit. Appellant was given credit by the appellees in their counterclaim on appellant's promissory note for out-of-pocket outlays made by him. All other claims based on services rendered were part and parcel of the prohibited carrying on of the duties of a broker, and could not be the basis of a recovery.

The judgment is affirmed.