274 So.2d 581 (1973)
GENEVA INVESTMENT, LIMITED, a Bahamian Corporation, and Nick Morley, Appellants,
v.
TRAFALGAR DEVELOPERS, LTD., a Bahamian Corporation Authorized to Do Business in Florida, Appellee.
No. 72-229.
District Court of Appeal of Florida, Third District.
February 27, 1973.
Rehearing Denied April 4, 1973.
*582 Bradford, Williams, McKay, Kimbrell, Hamann & Jennings, Sam Daniels, Miami, for appellants.
Smith, Mandler, Smith & Parker and Joe N. Unger, Miami Beach, for appellee.
Before CHARLES CARROLL, HENDRY and HAVERFIELD, JJ.
PER CURIAM.
Defendant-appellants seek review of a judgment declaring two contracts unenforceable in Florida.
In 1969, plaintiff-appellee, Trafalgar, Ltd., a Bahamian corporation, purchased for development a tract of land in Dade County, Florida. Trafalgar then conducted negotiations with appellant Nick Morley for the purpose of employing him as its exclusive world-wide sales agent. For this venture, Morley used the appellant corporation, Geneva Investment, Limited. The parties agreed upon a sales contract and a management contract. Both contracts were drawn up in Dade County and executed in the Bahamas on October 9, 1969. Under the sales contract, Trafalgar appointed Geneva as its exclusive sales and rental consultant and representative for the United States and the whole world. Geneva was also granted the right to purchase a portion of the property under certain stated conditions. It was further agreed that the contract would become effective on September 1, 1970 and expire five years thereafter. Other provisions relevant to this case are as follows:
"4. Trafalgar's Duties and Obligations. Trafalgar shall have the following duties and obligations hereunder:
* * * * * *
"(d) The term of this Agreement shall be divided into five consecutive twelve-month sales periods commencing with the effective date hereof. At least five months prior to the commencement of each such twelve-month sales period, Trafalgar shall advise Geneva in writing as to the total amount of dwelling units available to be sold by Geneva and the total amount of such dwelling units available to be leased by Geneva during such sales period, which amounts shall be the actual number of such dwelling units to be built during such period for which Trafalgar has then obtained construction and permanent financing commitments. Notwithstanding the foregoing, Geneva shall not be required to lease and/or sell more than 800 dwelling units during any such twelve-month sales period.
* * * * * *
"7. Covenants and Warranties. During the entire term of this Agreement, including any renewal thereof, Geneva covenants and warrants that it shall:
"(a) Comply with all laws and statutes of the United States and of the State of Florida and with all rules, regulations, policies of all administrative agencies thereof, including, without limitation, the Florida Installment Land Sales Board;

*583 "(b) Comply with all laws and statutes of the countries elsewhere in the world in which it operates on behalf of Trafalgar and all political subdivisions thereof, and with the rules, regulations and policies of all administrative agencies thereof, particularly those governing licensing of business and regulating sales activities." [Emphasis Supplied]
Mr. Morley signed the contract as president of Geneva and individually as he agreed to remain the controlling stockholder of Geneva Investment, Limited and not to engage in certain competitive activities. As compensation, Geneva was to receive a 5-8% commission at such time any purchase, sale, or rental by the corporation was closed or fully consummated.
Under the terms of the management contract, Geneva and Trafalgar agreed to form for the management of the properties a Florida corporation with each owning 50% of the stock.
Thereafter, Trafalgar refused to do any of the things required of it under the contracts. The requisite five months written notice admittedly was never given to Geneva. Likewise, the Florida management corporation was never formed.
In October 1970, Trafalgar filed a declaratory judgment action in which it sought to have the contracts declared null and void because at the date of the execution of same neither Geneva nor Morley were licensed real estate brokers. Subsequent to the filing of the suit, Geneva did become licensed in Florida as a corporate broker on December 18, 1970. The lower court declared the contracts to be unenforceable in the State of Florida. This appeal followed.
Appellants are contending on appeal that the trial court erred in holding the sales and management contracts to be void and unenforceable under F.S.A. Chapter 475. We agree.
It is generally established that a real estate broker need not have a license at the time the contract of employment is entered into, but he must have one at the time he renders the services for which he is entitled to compensation. See 12 C.J.S. Brokers § 67 (1938); 12 Am.Jur.2d Brokers § 179 (1964).
Additionally, our own Florida Statute 475.41, F.S.A., clearly states that registration is required at the time of performing the services:
"475.41 Contracts of unregistered person for commissions invalid
No contract for a commission or compensation for any act or service enumerated in subsection (2) of § 475.01 shall be valid unless the broker or salesman shall have complied with this chapter in regard to registration and renewal of the certificate at the time the act or service was performed." [Emphasis Supplied]
Accordingly, this court held in Florida Boca Raton Housing Association, Inc. v. Marqusee Associates of Florida, Fla.App. 1965, 177 So.2d 370, that a complaint to recover on a written instrument promising to pay a real estate commission must allege that the broker performing the service for which the commission is claimed was at the time of the rendition of the service a licensed broker. See also Bradley v. Banks, Fla.App. 1972, 260 So.2d 256.
In the case sub judice the parties executed the contracts in a jurisdiction which did not require the registration of real estate brokers. They were to commence at a future date. The sales contract provided that the appellants were to comply with the applicable Florida Statutes and appellee was to give five months notice to appellants so that they might have time to prepare and establish their "sales forces". No notice was ever given so that appellants might have had the opportunity to register as real estate brokers in compliance with Florida law and execute their duties pursuant to the contract.
A statute which is highly penal should be strictly construed. Land Company *584 of Florida v. Fetty, 15 F.2d 942 (5th Cir.1926). In addition, the purpose of the Real Estate Licensing Act is to protect the public from being forced to deal with dishonest or unscrupulous real estate operators, rather than to permit one party to gain unconscionable advantage by avoiding a just obligation which he has contracted to pay. Pokress v. Tisch Florida Properties, Inc., Fla.App. 1963, 153 So.2d 346.
We hold that the contracts in the case sub judice are not void and unenforceable because registration under F.S. § 475.41, F.S.A. was not necessary at the time of execution of these contracts which called for performance at a future date. Further, the Bahamas does not require the prerequisite of registration for one to deal in real estate and, consequently, there was no violation of Florida Chapter 475. See Seijo v. Futura Realty, Inc., Fla.App. 1972, 269 So.2d 738.
For the reasons stated herein, the judgment of the lower court must be reversed with directions to dismiss the complaint.
Reversed.