285 So.2d 593 (1973)
TRAFALGAR DEVELOPERS, LTD., Petitioner,
v.
GENEVA INVESTMENT LIMITED et al., Respondents.
No. 43679.
Supreme Court of Florida.
November 14, 1973.
Rehearing Denied December 13, 1973.
Sibley, Giblin, Levenson & Ward, Joe N. Unger, Smith, Mandler, Smith & Parker, Miami Beach, and Greene & Layne, Miami, for petitioner.
The Petition for Writ of Certiorari reflected probable jurisdiction in this Court. We issued the Writ and have heard argument of the parties. After hearing argument and upon further consideration of the matter, we have determined that the Court is without jurisdiction. Therefore, the Writ must be and is hereby discharged and the Petition for Writ of Certiorari is dismissed.
It is so ordered.
CARLTON, C.J., and ADKINS, McCAIN and DEKLE, JJ., concur.
ROBERTS, J., dissents with opinion.
ROBERTS, Justice (dissenting).
I must respectfully dissent from the decision of this Court to discharge the writ of certiorari sub judice.
This cause is before us on certiorari granted to review a decision of the District Court of Appeal, Third District, reported at 274 So.2d 581, which purportedly conflicts with Harris v. McKay, 176 So.2d 572 (Fla.App. 1965); Bradley v. Banks, 260 So.2d 256 (Fla.App. 1972). Conflict does exist and we, therefore, have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution F.S.A.
The opinion of the District Court of Appeal, Third District, succinctly states the facts pertinent to the instant cause, as follows:
"In 1969, plaintiff-appellee [petitioner herein] Trafalgar, Ltd., a Bahamian corporation, purchased for development a tract of land in Dade County, Florida. Trafalgar then conducted negotiations with appellant Nick Morley [respondent herein] for the purpose of employing him as its exclusive world-wide sales agent. For this venture, Morley used the appellant corporation, Geneva Investment, Limited. The parties agreed upon a sales contract and a management contract. Both contracts were drawn up in Dade County and executed in the Bahamas on October 9, 1969. Under the sales contract, Trafalgar appointed Geneva as its exclusive sales and rental consultant and representative for the United States and the whole world. Geneva *594 was also granted the right to purchase a portion of the property under certain stated conditions. It was further agreed that the contract would become effective on September 1, 1970 and expire five years thereafter. Other provisions relevant to this case are as follows:
"`4. Trafalgar's Duties and Obligations. Trafalgar shall have the following duties and obligations hereunder:
* * * * * *
"`(d) The term of this Agreement shall be divided into five consecutive twelve-month sales periods commencing with the effective date hereof. At least five months prior to the commencement of each such twelve-month sales period, Trafalgar shall advise Geneva in writing as to the total amount of dwelling units available to be sold by Geneva and the total amount of such dwelling units available to be leased by Geneva during such sales period, which amounts shall be the actual number of such dwelling units to be built during such period for which Trafalgar has then obtained construction and permanent financing commitments. Notwithstanding the foregoing, Geneva shall not be required to lease and/or sell more than 800 dwelling units during any such twelve-month sales period.
* * * * * *
"`7. Covenants and Warranties. During the entire term of this Agreement, including any renewal thereof, Geneva covenants and warrants that it shall:
"`(a) Comply with all laws and statutes of the United States and of the State of Florida and with all rules, regulations, policies of all administrative agencies thereof, including without limitation, the Florida Installment Land Sales Board;

"`(b) Comply with all laws and statutes of the countries elsewhere in the world in which it operates on behalf of Trafalgar and all political subdivisions thereof, and with the rules, regulations and policies of all administrative agencies thereof, particularly those governing licensing of business and regulating sales activities.' [Emphasis Supplied]
"Mr. Morley signed the contract as president of Geneva and individually as he agreed to remain the controlling stockholder of Geneva Investment, Limited and not to engage in certain competitive activities. As compensation, Geneva was to receive a 5-8% commission at such time any purchase, sale, or rental by the corporation was closed or fully consummated.
"Under the terms of the management contract, Geneva and Trafalgar agreed to form for the management of the properties a Florida corporation with each owning 50% of the stock.
"Thereafter, Trafalgar refused to do any of the things required of it under the contracts. The requisite five months written notice admittedly was never given to Geneva. Likewise, the Florida management corporation was never formed.
"In October 1970, Trafalgar filed a declaratory judgment action in which it sought to have the contracts declared null and void because at the date of the execution of same neither Geneva nor Morley were licensed real estate brokers. Subsequent to the filing of the suit, Geneva did become licensed in Florida as a corporate broker on December 18, 1970."
The trial court adjudged that at the time of the commencement of the suit, the contracts dated October 9, 1969, were unenforceable in Florida and that the licensing of Geneva Investment, Limited, as a corporate broker subsequent to the filing of this suit did not operate to validate said contracts.
On appeal, the District Court reversed the judgment of the trial court and found that the trial court erred in holding the sales and management contracts to be void and unenforceable under Chapter 475 since, the District Court explained, citing 12 C.J. *595 S. Brokers § 67 (1938) and 12 Am.Jur.2d Brokers, Section 179 (1964), it is generally established that a real estate broker need not have a license at the time the contract of employment is entered into although he must have one at the time he renders the services for which he is entitled to compensation. The basis of the District Court's opinion was that respondents were only required to be registered at the time services were performed, Section 475.41, Florida Statutes, that the parties executed the contracts in a jurisdiction which did not require the registration of real estate brokers, that the contracts were to commence in futuro, that the sales contract provided that the respondents were to comply with the applicable Florida Statutes and petitioner was to give five months notice to respondents so that they might have time to prepare and establish their "sales forces," and that no such notice was ever given so that respondents might have had the opportunity to register as real estate brokers in compliance with Florida law and execute their duties pursuant to the contract.
Two issues are presented for consideration of this Court. Whether a contract to be performed in Florida and elsewhere employing a person to sell real estate situated in Dade County, Florida, for a promised commission is valid if the broker so employed is unregistered and unlicensed under the provisions of Chapter 475, Florida Statutes, at the time of making of the contract? Whether a contract executed outside Florida to sell real estate for a commission to Florida residents and others is unenforceable if the party so employed is unregistered and unlicensed pursuant to Chapter 475, Florida Statutes, even though licensing and registration is not required for the brokeraging of property situated in the place where the contract was executed? I would respond in the negative to the first question and in the affirmative to the second question.
The pertinent Florida statutory provisions provide, as follows:
Section 475.41. "Contracts of unregistered person for commissions invalid.  No contract for a commission or compensation for any act or service enumerated in subsection (2) of § 475.01 shall be valid unless the broker or salesman shall have complied with this chapter in regard to registration and renewal of the certificate at the time the act or service was performed." (e.s.)
Section 475.17(1) in pertinent part provides, "An applicant for registration ... shall be required to make it appear that he is competent and qualified to make real estate transactions and conduct negotiations therefor, with safety to investors and to those with whom he may undertake a relationship of trust and confidence."
Section 475.15 provides, "Registration of certificates of members of firm, etc., required.  Every partnership and corporation required to be registered shall register, and renew the certificates of its members, officers and directors for each license period, and the registration of such partnership or corporation shall be suspended automatically during any period of time that certificates of any one or more of its members, officers or directors shall not be in force."
Section 475.01 (2) provides, "(2) Every person who shall, in this state, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraise, auction, sell, exchange, buy or rent, or offer, attempt or agree to appraise, auction or negotiate the sale, exchange, purchase or rental of any real property, or any interest in or concerning the same, including mineral rights or leases; or who shall advertise or hold out to the public by any oral or printed solicitation or representation that such person is engaged in the business of appraising, auctioning, buying, selling, *596 exchanging, leasing or renting real estate, or interests therein, including mineral rights or leases, of others; and every person who shall take any part in the procuring of sellers, purchasers, lessors or lessees of the real property, or interests therein, including mineral rights or leases, of another; or who shall direct or assist in the procuring of prospects, or the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who shall receive, expect, or be promised any compensation or valuable consideration, directly or indirectly therefor; and all persons who are members of partnerships or officers or directors of corporations engaged in performing any of the aforesaid acts or services; each and every such person shall be deemed and held to be a `real estate broker' or a `real estate salesman,' ..."
Section 475.01(3) provides, "(3) Every person who comes within the meaning of the preceding subsection, and shall not be within the exceptions named, and whose business policies and acts are free from the direction, control or management of another person, and all members of a partnership, and all officers and directors of a corporation, which partnership or corporation is defined by said subsection to be a real estate broker, shall be deemed and held to be operating as real estate brokers; and every other person who shall come within the terms `real estate broker' or `real estate salesman,' as defined in the preceding subsection, shall be deemed and held to be operating as real estate salesmen."
Petitioner herein argues that the respondents did by entering into these contracts, agree to negotiate the sale, exchange and rental of Florida real property and that therefore all of the officers and directors of Geneva were deemed to be acting as brokers without sanction of the requisite license and that such action by respondent is violative of Section 475.42(1)(a), Florida Statutes, which provides, "No person shall operate as a real estate broker or salesman without being the holder of a valid current registration certificate." Section 475.42(3)(b) states that "person" as used in Chapter 475, Florida Statutes, shall refer to an individual or a corporation and subsection (3)(a) defines "`operate' or `operating' as a broker" to mean the commission of one or more acts described in Sections 475.01(2) and 475.01(3), Florida Statutes. Violation of these statutory provisions constitutes a misdemeanor. Section 475.42(2), Florida Statutes.
I must fully agree with petitioner's contention and the judgment of the trial court that the contract by which respondent accepted employment to sell Florida real estate in Florida for compensation while unregistered and unlicensed in Florida as real estate brokers, is prohibited by law and was properly adjudged to be unenforceable in the State of Florida by the trial court. By the contract, respondents agreed to negotiate the sale, exchange, purchase or rental of real property. In Bradley v. Banks, supra, the court held that a contract to pay a portion of a real estate commission for services of plaintiff, who at the time of the contract was not registered as a real estate broker pursuant to Chapter 475, Florida Statutes, was entirely void as a matter of public policy since "at the time the act or service was performed" plaintiff was not registered as a real estate broker or salesman. Also see Campbell v. Romph Bros., Inc., 132 So.2d 466 (Fla.App. 1961); Harris v. McKay, supra; Wegmann v. Mannino, 253 F.2d 627 (5th Cir.1958). As aforestated, Section 475.41 specifically provides that contracts of unregistered person for commission or compensation to perform any act or service enumerated in Subsection (2) of Section 475.01 is invalid.
As to point two petitioner asserts that petitioner entered into a contract with the respondents that was drafted in Dade County, Florida, executed in the Bahamas, and which obligated respondents to sell *597 Florida real estate in Florida to Florida residents as well as others. In his final judgment finding the contracts to be unenforceable in Florida, the trial judge found that the contracts were prepared and drafted by Florida counsel in Dade County, Florida, that after the written agreements were prepared, pursuant to the request of Nick Morley, Ramon Cacicedo and his counsel flew to Nassau, Bahamas, at the expense of Nick Morley, for the sole purpose of affixing their signatures to the contracts outside the territorial limits of the United States, that Ramon Cacicedo entered into the sales agreement and the management agreement for the sole purpose of engaging the services of Nick Morley individually to effect the sale of property owned by Trafalgar Developers, Ltd. located in Dade County, Florida, and that the record evidence clearly shows that the contracting parties intended to engage in sales activities in Florida as well as outside of Florida.
I must disagree with the decision of the District Court that since the contract was executed in the Bahamas wherein registration and licensing is not required, there was no violation of Chapter 475, and the contracts were therefore not unenforceable in Florida. Generally, under conflict of law to determine the validity of a contract, we look to the law of the place where the last act necessary to complete a contract is performed (lex loci contractus);[1] however, public policy may preclude enforcement of the contract valid under the laws of the place of lex loci contractus where the same is contrary to the law and public policy of Florida. In Lloyd v. Cooper Corporation, 134 So. 562 (Fla. 1931), this Court held that a contract made and valid in one state may not be enforced in another state when it is contrary to the law and public policy of the latter state. This Court has held that comity "[D]oes not require a court to enforce rights given by a statute of another state to the prejudice of its own citizens, or when complete justice cannot be done, nor will the courts of one state enforce laws of another state which are repugnant to its own or to public policy." Hartford Acc. & Indemnity Co. v. City of Thomasville, 130 So. 7 (Fla. 1930) at 8. To allow an unregistered and unlicensed person to enter into a contract to sell Florida real estate is against the public policy of this State. Section 475.17(3), Florida statutes, explicitly provides that "The intent of the legislature in enacting this law is to elevate the profession of a real estate broker for the protection of the public," emphasis supplied; and as aforestated Section 475.17(1) provides that those seeking to become members of this profession must show that he is competent and qualified to make real estate transactions and conduct negotiations therefor, with safety to investors and to those with whom he may undertake a relationship of trust and confidence. Florida courts have long held that the statutes for the regulation and registration of real estate brokers are intended for the purpose of protecting the public against financial loss through unscrupulous practices in real estate transactions and affording the public protection by permitting only those who possess certain qualifications to engage in the business of real estate brokers. Holland v. Florida Real Estate Commission ex rel. Linesbaugh, 178 So. 121 (Fla. 1938); Horne v. Florida Real Estate Commission, 163 So.2d 515 (Fla.App. 1964); Miller Co. v Florida Real Estate Commission, 156 So.2d 667 (Fla.App. 1963); Pokress v. Tisch *598 Florida Properties, Inc., 153 So.2d 346 (Fla.App. 1963). The District Court of Appeal, Second District, stated in Foulk v. Florida Real Estate Commission, 113 So.2d 714, 717 (Fla.App. 1959):
"The Florida legislature, in seeking to elevate the status of real estate brokers and the profession of real estate with all its related phases, under regulations designed for the protection of the public, through Chapter 475, Florida Statutes, F.S.A., has subjected this field of endeavor to requirements which must be met by those who engage in any of its defined activities. The Florida Supreme Court has recognized that the real estate business in this state has become highly specialized and that one who engages in this business belongs to a privileged class and enjoys a monopoly in that field. He is the confidant of the public in much the same manner as a lawyer or a banker. His relationship to the public exacts the highest degree of trust and confidence, and his status under the law is accompanied by recognized privileges and responsibilities. Ahern v. Florida Real Estate Commission ex rel. O'Kelly, 1942, 149 Fla. 706, 6 So.2d 857; Zichlin v. Dill, 1946, 157 Fla. 96, 25 So.2d 4; and Gabel v. Kilgore, 1946, 157 Fla. 420, 26 So.2d 166."
Petitioner correctly points out the possibilities under the decision of the district sub judice, for an unlicensed, unregistered person of a character sought to be excluded to circumvent Florida law be merely causing the contract of employment to be executed outside the State of Florida.
Since the instant contract is violative of the law and public policy of this State, I would find it to be unenforceable regardless of the fact that Bahamas does not require the prerequisite of registration for one to deal in real estate.
For the aforestated reasons, I must respectfully dissent from the majority opinion which discharges the petition for writ of certiorari after argument. I would retain jurisdiction, quash the decision of the District Court, and remand with instructions to reinstate the judgment of the trial court.
NOTES
[1] Holderness v. Hamilton Fire Ins. Co. of New York, 54 F. Supp. 145 (D.C.Fla. 1944); Charles Bowman & Co. v. Erwin, 468 F.2d 1293 (5 Cir.1972); State-Wide Co. v. Flaks, 233 So.2d 400 (Fla.App. 1970); Fincher Motors, Inc. v. Northwestern Bank & Trust Co., 166 So.2d 717 (Fla.App. 1964). In Brown v. Case, 80 Fla. 703, 86 So. 685, this Court stated: "The general principle adopted by civilized nations is, that the nature, validity and interpretation of contracts, are to be governed by the lex loci of the country where the contracts are made or are to be performed; but the remedies are to be governed by the lex fori." Perry v. Lewis, 6 Fla. 555.