SCHWARTZ, Chief Judge.
The plaintiff-appellant, Republic Funding Corporation, a New York corporation, recovered a jury verdict — resulting in a $260,-000 award — in an action on an oral brokerage agreement for securing a $13,000,000 *1098 loan from the Bank of Montreal to partially finance defendant-appellees’ Florida cable TV business.[1] On post-trial motions, however, the lower court entered judgment for the defendants on the ground that, because Republic was not a registered Florida mortgage broker, the action was barred by the Florida Mortgage Brokers Act, section 494.04(1), Florida Statutes (1983):
No person shall act as a mortgage broker or mortgage solicitor in this state, or in, out of, or from offices in this state, without a license therefor as provided in this act.[2]
I
While it is established law that brokers who are not properly registered in Florida as required by statute may not recover commissions for that reason, 7 Fla. Jur.2d Brokers § 74 (1978), we find that, for at least two separate reasons,[3] this principle does not apply here and that the ruling below is therefore erroneous.
1. The record shows, not only that the defendants’ principal, Hermanowski, went to New York City to seek out Republic and that the agreement sued upon was entered into there,[4] but, more important for the present purposes, that all of the plaintiff’s services in arranging the loan with the Bank of Montreal were performed in that state. Indeed, Republic’s only contact with Florida occurred when its representative accompanied Hermanowski and officers of the prospective lender when they met in Miami to inspect the site and discuss the defendants’ proposed operation; it is undisputed, however, that Republic engaged in no negotiations whatever during that time. Since none of the broker’s compensable activities took place in Florida, it is clear that section 494.04, which refers specifically to one’s acting as a mortgage broker “in this state, or in, out of, or from offices in this state,” does not apply. See Lucas v. Gulf & Western Industries, Inc., 666 F.2d 800 (3d Cir.1981) (holding on indistinguishable facts that equivalent provision of Florida real estate licensing law inapplicable to bar claim for services in selling Florida real estate performed in New Jersey); Paulson v. Shapiro, 490 F.2d 1 (7th Cir.1973) (same result under Wisconsin law as to services relating to Wisconsin realty performed in Illinois); see generally Geneva Investment, Ltd. v. Trafalgar Developers, Ltd., 274 So.2d 581 (Fla. 3d DCA 1973), cert. discharged, 285 So.2d 593 (Fla.1973).
2. When the $18,300,000 in loans were closed in New York City, the borrowers executed a standard UCC-1 financing form which granted the lenders a lien on all their assets. Completely fortuitously, these included a parcel of Florida land worth $200,-000 which thus became subject to a mortgage which, in a very small part, secured the entire loan: this was the only aspect of the entire arrangement which involved a “mortgage loan” [5] at all. There is no question that the existence of this mortgage, covering property valued at less than 2% of the entire loan, was a totally adventitious circumstance which was immaterial to the consummation of the loan, which, like the plaintiff’s compensable efforts in arranging *1099 it, would have taken place in precisely the same manner in its absence. Under the prevailing law, the mere presence of an incidental element such as this — even one which, standing alone, would have involved a regulatory provision like section 494.04— does not subject the entire transaction to the statute and its invalidating effect. Thus, in Hughes v. Chapman, 272 F.2d 193 (5th Cir.1959), the court rejected the contention that an unregistered media broker’s commission claim for the sale of a radio station situated on a 99-year Florida leasehold was barred by the Florida Real Estate Brokerage Act. Affirming the trial court’s determination that the transfer of the leasehold, while it itself involved realty, was only incidental to the entire sales transaction, the fifth circuit quoted with approval from Weingast v. Rialto Pastry Shop, Inc., 243 N.Y. 113, 152 N.E. 693 (1926):
We do not think this provision broad enough to cover or was intended to cover, every transaction in which an interest in real estate may be part of the subject transfer.
Id. at 116, 152 N.E. at 694. Similarly, in Schindler v. Florida Real Estate Commission, 144 So.2d 862 (Fla. 3d DCA 1962), this court reversed a suspension imposed upon the petitioners because they had unlawfully shared commissions with unlicensed persons. We held that the transactions in question, although including the transfer of leases, were not subject to the Florida statutes, because
[t]he two transactions on which those charges were based, related to the sale of businesses, and the leases transferred in connection therewith were incidental.
Id. at 863. We believe that these authorities compel the determination that the highly “incidental” $200,000 mortgage did not place the loan under section 494.04.[6]
II
The trial court ruled, and the parties now agree, that New York law governs the brokerage contract between them. By way of limited counter-attack, the defendants contend that, even if, as we have concluded, Republic’s claim may not be wholly invalidated, its recovery should be limited to $65,000 by New York General Obligation Law, section 5-531 (McKinney 1978) which, when the contract was formed in 1982,[7] provided
1. No person shall, directly or indirectly, take or receive more than fifty cents for a brokerage, soliciting, driving or procuring the loan or forbearance of one hundred dollars, and in that proportion for a greater or less sum, except loans on real estate security; nor more than thirty-eight cents for making or renewing any bond, bill, note or other security given for such loan or forbearance, or for any counter bond, bill, note or other security concerning the same.
We reject the appellees’ contention to this effect on the basis of Armstrong v. Rangaire Corp., 493 F.Supp. 390 (S.D.N.Y.1980). In that decision, the court concluded, upon a comprehensive and erudite analysis of the statute and the prior New York cases, including those cited by the appel-lees, that the applicable version of section 5-531 does not apply to a transaction such as the one before us: a large arms-length private placement loan from institutional lenders to prosperous, unpressed borrowers.[8],[9] We are convinced that Arm *1100 strong s resolution of the issue is the correct one.
Since we have found the appellees’ other contentions to the contrary likewise without merit, we reverse the judgment below and remand the cause for entry of a $260,-000 judgment for the appellant in accordance with the jury verdict, together with appropriate prejudgment interest.
Reversed and remanded with directions.

. An additional $5,300,000, making a total of $18,300,000 in the entire transaction, was lent by a cooperating bank in Washington, D.C. By answers to special interrogatories, the jury found that Republic was entitled to a 2% commission on the Bank of Montreal’s $13,000,000 share only.

. Section 494.02(2) defines a mortgage loan as any loan secured by a mortgage on real property or any loan secured by collateral which has a mortgage lien interest in real property.

. We find it unnecessary to pass directly upon the appellant’s claims that the Florida law may not be applied simply because the oral brokerage agreement was entered into in New York, and the pertinent loan documents provided for the application of New York law. See Geneva Investment Ltd. v. Trafalgar Developers, Ltd., 274 So.2d 581 (Fla. 3d DCA 1973), cert. discharged, 285 So.2d 593 (Fla.1973): Richland Development Co. v. Staples, 295 F.2d 122 (5th Cir. 1961); see also Burroughs Corp. v. Suntogs of Miami, Inc., 472 So.2d 1166 (Fla.1985); Morgan Walton Properties, Inc. v. International City Bank & Trust Co., 404 So.2d 1059 (Fla.1981).

. See supra note 3.

. See supra note 2.

.In respectively holding and urging to the contrary, the trial court and the appellees have mistakenly relied on Florida Real Estate Commission v. McGregor, 268 So.2d 529 (Fla.1972). That case held only that a corporation engaging in pure and undoubted real estate transactions — purchasing and servicing Florida mortgages — was not exempted from the Florida license law merely because they were " ‘incidental’ or only a minor part” of the corporation’s entire business. 268 So.2d at 531. McGregor has nothing to do with the present question of whether a particular brokered transaction is subject to the statute because a minor and insignificant aspect involves a piece of Florida realty.

. See infra note 9.

. An examination of the statute, the New York case law interpreting the section, and the relationship of the section to New York’s usury laws and to the securities laws generally convinces the Court that the New York legislature did not intend the statute to apply to private *1100 placement transactions between corporate borrowers and large institutional lender-investors such as Teachers.

The Court finds that the fact pattern here is akin to that in Middleman [v. Elias Press, Inc., 124 Misc. 717, 209 N.Y.S. 123 (City Ct.1925) ] and Srebnik [v. Transportation & Travel Pavilion, Inc., 43 Misc.2d 860, 252 N.Y.S.2d 574 (Sup.Ct.1964) ], supra, rather than that in Scudder [v. Hoyt, 218 A.D. 11, 216 N.Y.S. 305 (1926), aff'd, 245 N.Y. 522, 157 N.E. 842 (1927)] or Enfeld [v. Diamond, 51 N.Y.S.2d 113 (Sup.Ct.1944) ] and concludes that the corporate defendant here may not avoid its contractual obligations by asserting Section 5-531 as a defense.
The facts of this case do not suggest in the slightest the evils warned of in Scudder of "excessive charges for brokerage," or “extortion and unconscionable charges” imposed on desperate borrowers unable to obtain financing elsewhere. Here, Rangaire — the borrower contracting with Armstrong for brokerage services — is a prosperous corporation able to secure several sources of funding in the financial marketplace_ Rangaire described itself as well-satisfied with its loan arrangement with Teachers, ... and the brokerage fees that Rangaire agreed to pay are in line with standard fees for arranging private placements of this size.... Rangaire nowhere asserts that it was fraudulently induced, or coerced by extreme need or desperation, into making these arrangements, and such an assertion would not appear plausible on this record. Moreover, unlike the situation in Scudder, supra, and Enfeld, supra, Armstrong was not related in any way to either the borrowing or the lending company here, and made full disclosure of its financial interest in the loan arrangements prior to execution of Rangaire’s authorization for Armstrong to solicit the initial loan. Thus, the purpose of Section 5-531 outlined in the case law — protection of vulnerable borrowers from unconscionable or extortionate charges — does not appear to be implicated here.
Armstrong v. Rangaire Corp., 493 F.Supp. 390, 395, 397 (S.D.N.Y.1980) (footnote omitted).

. Effective August 1, 1984, section 5-531 was amended to apply only to “consumers." The appellees cite New York authority that, under some circumstances, a statutory amendment is deemed to have materially changed the law from what it was before — thus implying that section 5-531 was indeed previously enforceable by non -“consumers" like the defendants. N.Y. [Stats.] Law § 193(a) (McKinney 1971).
In the light, however, of the existing disputes, including Armstrong itself, as to the scope of the unamended section 5-531, we consider that the following statement of the law of New York is applicable:
The force to be given subsequent legislation as affecting prior legislation also depends somewhat upon the time of the enactment and the surrounding circumstances, including the history of the various enactments. If it follows soon after controversies have arisen as to the interpretation of the original act, it may well be construed as explanatory of the ambiguities over which such controversies arose.
N.Y. [Stats.] Law § 193(b) comment (McKinney 1971). On this basis, as many Florida decisions indicate, e.g., Brooks v. State, 478 So. 1052 (Fla.1985), the 1984 amendment is properly regarded as reflecting the legislature’s specific confirmation of what it had previously intended, but had only imperfectly stated before. Thus, the amendment serves only to reinforce the correctness of Armstrong’s interpretation of the statute.