## In re CAPTRAN CREDITORS TRUST, Debtor.

Bankruptcy No. 85-45-8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 30, 1988.

See also, Bkrtcy., 84 B.R. 812.

Ken F. Boland, Sturbridge, Mass., Malka Isaak, Tampa, Fla., Jack Grobowsky, Grand Bahama Island, Bahamas, for Captran Creditors Trust, debtor.

## ORDER ON OBJECTION TO CLAIM

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case and this is the next chapter of the ongoing war between Captran Creditors Trust (Debtor) and Captran Resort International (CRI), one of the petitioning creditors who joined in their bankruptcy case filed by the original petitioning creditor. In the present instance, the controversy relates to the allowability of a claim filed by CRI in the amount of $58,000. Objection to the claim is filed by the Debtor, who contends that the claim cannot be allowed in any amount as a matter of law. The facts relevant to the resolution of the Debtor's Objection as developed in the final evidentiary hearing are as follows:

CRI is a Florida corporation formed in 1972 and was engaged in several real estate development projects in southwest Florida primarily for the purpose of selling time-share units to the public at large in the facilities constructed or to be constructed. Keith Trowbridge was, at all times relevant, the president and the sole stockholder of CRI. On July 16, 1982, CRI, having run into financial difficulties, hav-

ing suffered a very substantial money judgment which awarded compensation and punitive damages in excess of $1 million dollars, filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. CRI's efforts to obtain rehabilitation under the aegis of the Bankruptcy Code never came to fruition because prior to proceeding to confirmation, it entered into a settlement with its largest creditors pursuant to which CRI agreed to transfer and convey the majority of its assets to a newly created trust for the benefit of the creditors and to liquidate the assets transferred and to distribute the proceeds of liquidation to the beneficiaries of this newly created Trust. (CRI Exhibit No. 1)

According to Paragraph 7 of the Contract to Purchase, (Exhibit E of the Trust Document) which was part of the Trust Agreement, CRI was to be responsible for marketing the assets transferred to the Trust under the Trust Agreement, primarily time-share units, and was entitled under Clause (B) of the Trust Agreement to a 38% commission to be paid by the Trust upon "closing of title" based in [sic] the actual sales price paid for the time-share unit week sold by CRI. The record reveals that pursuant to the Contract for Purchase, CRI in fact undertook marketing the time-share units through promotion and advertisement, and by utilizing the staff of its wholly owned subsidiary, Interval Realty, Inc. (Interval), to procure sales from prospects obtained by Interval.

In the connection of sales actually made, CRI received commissions over a two-year period close to $3 million. The evidence is unclear whether or not these commissions were paid to CRI prior to the closing, but be that as it may, the commissions were in fact paid to CRI by the closing agent, North American Title Insurance Company (NATIA), an entity which was also controlled by Trowbridge. According to Trowbridge, CRI in turn paid real estate commissions to the sales persons employed by Interval, who procured the sales of time-share units. There is no question and it is without dispute that neither Trowbridge or CRI was ever a licensed real estate broker or a licensed real estate sales person. It is not disputed that the employees of Interval, which was the only licensed real estate firm, appear to have been licensed as real estate sales persons.

On January 9, 1985, NATIA, George E. Mills and Joan Smoak filed an involuntary petition for relief against the Debtor. The involuntary petition was vigorously contested by the Debtor, but it ultimately consented to the entry of an Order for Relief under Chapter 11 of the Code. In this connection, it should be noted that NATIA, one of the original petitioning creditors, voluntarily withdrew from the case and was replaced by CRI as a petitioning creditor, its Motion to join the petitioners having been granted.

The claim under consideration as noted earlier was filed on March 8, 1985, signed by Trowbridge as president of CRI and is asserted in the amount of $59,248. The stated basis for the claim is "marketing services provided to the Debtor." On July 12, 1988, the Debtor filed an Objection to the claim filed by CRI in which it alleged, inter alia, that the Debtor is not indebted to CRI because 1) the claim is a claim for commissions for unclosed sales; 2) CRI already received commissions of $700,000 prematurely "toward the real estate closing of the units"; and 3) CRI is also a Defendant in an adversary proceeding in which the Debtor is asserting a counterclaim against CRI on several different theories, asserting a claim in excess of $1 million. There is nothing in the Objection of the Debtor which even intimates that the invalidity of the claim is based on the contention that the monies claimed by CRI are commissions earned for sale of real estate by CRI which was never licensed as a real estate broker and, therefore, under applicable law, Fla.Stat. 475.41, is not authorized to receive any commission. Notwithstanding, the evidence presented in support of the Objection of the Debtor was entirely premised on that proposition and in light of the fact that counsel for CRI did not object to any evidence relating to this issue, this Court will consider the applicability of this Statute to the claim under consideration.

The relevant portions of the Statute involved are as follows:

## CHAPTER 475

### REAL ESTATE BROKERS, SALESMAN, AND SCHOOLS

#### 475.01 DEFINITIONS

As used in this chapter:

[Subsection (3) effective January 1, 1982]
(3) "Broker" means a person who, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor ... sells ... or agrees to ... negotiate the sale ... or any real property or any interest in or concerning the same ... or who advertises or holds out to the public by any oral or printed solicitation or representation that he is engaged in the business of ... selling ... or who takes any part in the procuring of ... purchasers ... or interest therein, ... or assists in the procuring of prospects or in the negotiation or closing of any transaction which does, or is calculated to, result in a sale, ... thereof.... The term "broker" also includes any person who is a partner, officer, or director of a partnership or corporation which acts as a broker.

In support of the proposition urged by the Debtor that the claim cannot be allowed as a matter of law, the Debtor cites *The Meadows of Beautiful Bronson, Inc. v. E.G.L. Investment Corp. and Eric Lifschutz,* 353 So.2d 199 (Fla. 3d DCA), *cert. denied,* 360 So.2d 1248 (Fla.1978) decided by the Third District Court of Appeals on December 20, 1977. In this case the Court of Appeals held that a suit for real estate commission should have been dismissed for the failure to allege that the plaintiffs were licensed and registered brokers at the time the services were rendered. In *Meadows of Bronson,* the plaintiffs were members of a group known as FISCO, who contracted to engage in the selling, marketing, advertising and servicing of the real property owned by the appellants. The agree-

ment required by its terms the rendition of the real estate broker services with others who were neither licensed nor registered real estate brokers or salesmen.

In the present instance, the services rendered by CRI differs in no respect from the services involved in *Meadows of Bronson.* According to Trowbridge, CRI was to market the sale of time-share units through promotion, advertisement and the like. The fact that actual negotiations for signing the contract to purchase were done by sales persons of Interval, a wholly owned subsidiary of CRI is of no consequence. The claim under consideration is a claim for commissions for selling time-share units. It is well-established in Florida that absence of pleading and proof that the broker was duly registered as a real estate broker claims and commissions cannot be enforced and such contract is unenforceable. *Moorings Development Company v. Porpoise Bay Co., Inc.,* 487 So.2d 60 (Fla.App. 4 Dist.1986); citing, *Meadows of Bronson, supra; Geneva Investment, Ltd. v. Trafalgar Developers, Ltd.,* 274 So.2d 581 (Fla. 3d DCA), *cert. dismissed,* 285 So.2d 593 (Fla.1973); *Florida Boca Raton Housing Ass'n v. Marqusee Associates,* 177 So.2d 370 (Fla. 3d DCA 1965); *Wegmann v. Mannino,* 253 F.2d 627 (5th Cir.), *cert. denied,* 358 U.S. 824, 79 S.Ct. 37, 3 L.Ed.2d 63, *reh'g denied,* 358 U.S. 896, 79 S.Ct. 151, 3 L.Ed.2d 123 (1958); *Sigmund Schy v. Martin Z. Margulies,* 407 So.2d 267 (Fla.App. 3rd Dist.1981).

While Trowbridge referred to the services as marketing, this Court is satisfied that the services for which commissions are claimed were the type of services covered by the Statute and since CRI was never licensed as a real estate broker, its claim cannot be recognized as a matter of law. In addition, this Court is also satisfied that under its contract, CRI was not entitled to any commission except upon closing and CRI offered no evidence whatsoever to show that the amount sought relates in any respect to time-share units actually sold, and on which deeds were actually delivered to the purchasers. This being the case, it is evident that even if one accepts the proposition that the claim is not bound by

the statute cited earlier, the claim cannot be allowed absent proof, which is not present, that the amount claimed is fee actually earned on sales closed.

DONE AND ORDERED.