153 So.2d 346 (1963)
Louis N. POKRESS, Appellant,
v.
TISCH FLORIDA PROPERTIES, INC., a Florida corporation, Americana Hotel, Inc., a Florida corporation, Americana Hotel Operating Corp., a Florida corporation, and Kratter corporation, a Delaware corporation, authorized to do business in the State of Florida, Appellees.
No. 62-532.
District Court of Appeal of Florida. Third District.
May 14, 1963.
Rehearing Denied June 7, 1963.
*347 Thomas A. Horkan, Jr., Miami, for appellant.
Williams, Salomon, Kenney & Lindzon, Miami, Kommel & Rogers, Miami Beach, for appellees.
Before PEARSON, TILLMAN, C.J., and CARROLL and HENDRY, JJ.
PEARSON, TILLMAN, Chief Judge.
The plaintiff, Louis N. Pokress, a registered real estate broker, brought suit against the several defendants claiming a real estate commission for the sale of certain property which he alleges the defendants, Tisch Florida Properties, Inc. and Americana Hotel, Inc., employed him to sell. A second count set forth that the plaintiff was deprived of his commission by the fraud and conspiracy of all the defendants, which had the effect of barring him from the negotiations for the sale which was thereafter completed. The trial judge dismissed the plaintiff's first complaint and then his amended complaint. This appeal followed.
The order dismissing appellant's first complaint was explicit as to the ground upon which it was entered:
"Basically, the Court is concerned with law which has been cited to it which stands for the proposition that where Co-Brokers are involved, the failure of one to be licensed in the state where the cause of action was pending *348 is fatal to the rights of all of them to recover; and the Court must treat the failure of the Plaintiff to allege that his Co-Brokers, whoever they were (in addition to the two mentioned in the complaint), were so licensed in Florida as equivalent to an allegation that they were not; or, at least, the failure of the complaint to contain such an allegation renders the complaint subject to the motion to dismiss for want of a material allegation, the averment and proof of which is essential to the Plaintiff's right to recover. The Court is of the opinion that such Doctrine of Law is sound and that it applies to and governs this case.
"In view of the Court's position, it becomes unnecessary to pass upon the numbers of other grounds urged by the Defendants other than the Defendant, KRATTER CORPORATION as to the insufficiency of the complaint and it likewise becomes unnecessary to rule upon the motion of such other Defendants for more definite statement."
Thereafter, the amended complaint was filed. The significant portions of the amended complaint are as follows:
* * * * * *
"Count I
* * * * * *
"3. During and prior to August, 1957, the Defendants, TISCH FLORIDA PROPERTIES, INC., and AMERICANA HOTEL, INC., acting through their President and principal officer, Laurence A. Tisch, employed the Plaintiff to effect a sale of the AMERICANA HOTEL property and business on Miami Beach, Florida, on certain terms and conditions, which terms and conditions included a lease back to the sellers or their nominees of the said property and business.
"4. Pursuant to such employment, and to both direct and implied authority thereunder, the Plaintiff employed the services, as subagents, of H. Michael Ryan, a licensed real estate broker in the State of Virginia, and C. Joshua Grossman, a licensed real estate broker in New York. The said H. Michael Ryan and C. Joshua Grossman were the only persons having anything to do with the matters alleged herein, who were not duly licensed real estate brokers or salesmen in the State of Florida.
"5. As a result of the combined efforts of the Plaintiff, and his said subagents, the Plaintiff effected a sale of the said AMERICANA HOTEL property and business to the Defendant, KRATTER CORPORATION, on the terms and conditions which had been offered by the Plaintiff pursuant to his said contract of employment.
* * * * * *
"Count II
* * * * * *
"10. Pursuant to such employment, the Plaintiff acting through the efforts of his co-brokers, including H. Michael Ryan and C. Joshua Grossman, offered the said property for sale to Marvin Kratter the President of the Defendant, KRATTER CORPORATION, and furnished to him certain information concerning the hotel, including the terms and conditions of the sale and lease-back arrangement. The said offering and furnishing of information to the said Marvin Kratter was made during the month of August, 1957. Thereafter, the aforesaid Laurence A. Tisch, and the aforesaid Marvin Kratter, acting in collusion and conspiracy to defraud the Plaintiff and his co-brokers of their commission, represented to the Plaintiff and his co-brokers that the Plaintiff was not authorized to offer the property for sale at any time in the future, that the property and business were not for sale, that the Defendant sellers and the Defendant KRATTER CORPORATION, *349 were not carrying on any negotiations for the sale and purchase of the said property and business. These representations were made for the purpose of inducing the Plaintiff and his subagents to abandon any and all efforts to further negotiate or deal with the said property and business, and to induce them to terminate and cease all negotiations between the Defendant sellers and the Defendant purchaser, and to thereby forfeit or abandon their just commission herein. These representations were false, in that the property actually was for sale, and that the Defendant sellers and the Defendant purchaser were actually carrying on secret negotiations for the sale of this property, together with a lease-back to the sellers, and were secretly negotiating and dealing between themselves in this connection, and in connection with making a public offering of stock in the Defendant, KRATTER CORPORATION. As a result of such negotiations and dealings, which were continuous, the parties entered into such a sale and leaseback of the property in February of 1960, the total purchase price being $15,900,000.00."
The court dismissed plaintiff's amended complaint without leave to amend and without indicating the ground or grounds upon which the dismissal was entered.
It appears that the controlling question involved is whether a Florida broker may recover for services rendered in the sale of property located in Florida when it affirmatively appears from the complaint that he, in turn, employed out-of-state brokers, licensed in their state but not licensed in the State of Florida, to assist him in finding a purchaser in the states in which they are licensed. The position of the appellant is that the Florida statutes do not contain a prohibition against a Florida broker using the services of duly licensed brokers in other states provided the services in the State of Florida are performed by the principal broker who is licensed here.
On the other hand, appellees maintain that § 475.01, Fla. Stat., F.S.A.,[1] taken into conjunction with § 475.41, Fla. Stat., F.S.A.,[2] prohibits payment of a commission *350 for a property sale in Florida in which brokers not licensed in the State of Florida have actively participated.
Counsel have been unable to cite a case in this jurisdiction bearing directly on this question. We think that the most helpful case is Wegmann v. Mannino, 253 F.2d 627 (5th Cir.1958), which originated in Florida. In that case the plaintiff entered into a contract with the defendants whereby the defendants were to purchase certain land, and the plaintiff "as agent" was to perform certain services for the owners. These services included the preparation of the land for sale and the responsibility for the operation and conduct of the business of selling the land. The plaintiff sued for his compensation. The district court dismissed plaintiff's complaint because the service required of him included acts which could be performed only by a registered broker, which plaintiff was not. In affirming the decision of the trial court, the circuit court held that the plaintiff's inability to recover was not changed by the fact that he had employed salesmen and brokers who were themselves legally licensed.
Even though the court in the Wegmann case denied the broker his commission, we think that the reasoning of that case centered on the capacity of the plaintiff to sue as determined by the position of the plaintiff himself. In the instant case, there is no question but that the plaintiff, Pokress, has the capacity to sue for a commission; and such right to sue would not be questioned if he were the only broker involved.
We are concerned here with the dual considerations of statutory interpretation and public policy. Appellees-defendants contend that to permit a broker who is licensed in this state to use the services of those outside the state who are unlicensed here would result in this state losing its ability to supervise persons performing brokerage services within its borders. It is thus argued that out-of-state brokers would be able to perform services here without responsibility under the Florida Real Estate License Law.
From a public policy standpoint, we do not think this situation requires the violent remedy suggested. It is not unusual under modern conditions for a seller and potential buyers to be separated by many miles and several states. To hold that a Florida real estate broker is barred from the assistance of his fellow brokers in other states would be to require Florida brokers to be limited and provincial in their scope. Public policy is best served by those interpretations of the law which stimulate rather than depress commerce. We, therefore, decline to follow the proposition urged by the appellees to the effect that public policy requires that the plaintiff be barred from recovery because he has used the services of brokers licensed in other states, but not licensed in Florida. Our conclusion is limited to the situation where the assisting brokers are licensed in the states in which their services are performed. We believe that we are supported by cases in several jurisdictions. See Philbrick v. Chase, 95 N.H. 82, 58 A.2d 317, 3 A.L.R.2d 526 (1948); Folsom v. Young and Young, Inc., 216 F.2d 352 (5th Cir.1954).
In addition to what we have just stated regarding the public policy aspects of this situation, there is one other that commands our attention. In Bell v. United Farm Agency, Inc., 296 P.2d 149, 152 (Okla. 1956), the Supreme Court of Oklahoma had the following to say involving a real estate brokerage commission for a plaintiff not licensed in Oklahoma:
"* * * The obvious purpose of the Act in question was to protect the public from being forced to deal with dishonest or unscrupulous real estate operators, rather than to permit one party to gain an unconscionable advantage by avoiding a just obligation which he has contracted to pay."
Although involving a distinguishable factual situation, we find the above-quoted remarks appropriate to the situation here considered.
*351 We need now turn our attention to the applicable provisions of Chapter 475 of the Florida Statutes, F.S.A., which encompasses the real estate licensing laws of this state. Section 475.01(2) thereof sets forth those activities which are deemed to be those of a "real estate broker" and for which, consequently, a license is required. It could be argued that under the wording of this section (set forth in footnote 1 above) the activities for which a person is required to be registered as a real estate broker are only those which take place in this state. If this be the case, it would not be a violation under § 475.25(1) (f), as it existed prior to 1961, to pay a commission for securing a purchaser out of the state, nor would § 475.41 invalidate a contract for commission for such an act.[3]
Appellee, Kratter Corporation, maintains that in order for the appellant to succeed on the basis of the conspiracy alleged in Count Two of the complaint, he must first establish the cause of action on the contract set forth in Count One. Since we have determined that the first count is sufficient, we must consider appellees' further argument that the second count is deficient in that it fails to set forth sufficient facts to constitute an action for fraud and deceit.
We think that this objection is well taken; however, we hold that the plaintiff should not be precluded at this time from an effort to state a cause of action on this count. Therefore, the order dismissing the second count without leave to amend was error.
Ordinarily, appellate courts will not allow amendment where the file does not affirmatively show that the plaintiff requested leave to amend and was denied. In this case, it appears that the order of the trial court was based upon the ground of plaintiff's presumed incapacity to sue; therefore, we feel that the ends of justice require that the plaintiff be given an opportunity to amend his second count.
For the reasons stated, the order dismissing plaintiff's second amended complaint is reversed and the cause is remanded for further proceedings.
Reversed.
NOTES
[1] § 475.01 is in part as follows:

"(2) Every person who shall, in this state, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraise, auction, sell, exchange, buy or rent, or offer, attempt or agree to appraise, auction or negotiate the sale, exchange, purchase or rental of any real property, or any interest in or concerning the same, including mineral rights or leases; or who shall advertise or hold out to the public by any oral or printed solicitation or representation that such person is engaged in the business of appraising, auctioning, buying, selling, exchanging, leasing or renting real estate, or interests therein, including mineral rights or leases, of others; and every person who shall take any part in the procuring of sellers, purchasers, lessors or lessees of the real property, or interests therein, including mineral rights or leases, of another; or who shall direct or assist in the procuring of prospects, or the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who shall receive, expect, or be promised any compensation or valuable consideration, directly or indirectly therefor; and all persons who are members of partnerships or officers or directors of corporations engaged in performing any of the aforesaid acts or services; each and every such person shall be deemed and held to be a `real estate broker' or a `real estate salesman,' as hereinafter classified * * *."
[2] § 475.41 provides:

"475.41 Contracts of unregistered person for commissions invalid. No contract for a commission or compensation for any act or service enumerated in subsection (2) of § 475.01 shall be valid unless the broker or salesman shall have complied with this chapter in regard to registration and renewal of the certificate at the time the act or service was performed."
[3] It is to be noted that in 1961 (subsequent to all acts in question here) § 475.25 was amended to provide that "* * * a registered real estate broker of this state may pay a referral fee or share a real estate brokerage commission with a real estate broker duly licensed, or registered, under the laws of a foreign state so long as said foreign broker does not violate any law of this state." In this connection see Bell v. United Farm Agency, Inc., 296 P.2d 149 (Okla. 1956).