429 So.2d 30 (1983)
Lou TASSY and Holiday Realty, Ltd., a Canadian Corporation, Appellants,
v.
Charles A. HALL, Trustee, Appellee, and
Starr Brothers, Inc., and A. Joan Bellm, Appellees/Cross-Appellants, and
Terrace Village Construction, Ltd., a Canadian Corporation, Appellee/Cross-Appellee.
No. 82-385.
District Court of Appeal of Florida, Fifth District.
March 2, 1983.
*32 Ellen D. Phillips of Meredith & Dobson, St. Augustine, for appellants.
Charles D. Hood, Jr., Daytona Beach, for appellees/cross-appellants.
Jefferson W. Clark and Charles A. Hall, New Smyrna Beach, for appellee/cross-appellee.
COWART, Judge.
May a real estate broker, licensed in a foreign jurisdiction but not in Florida, who procures, in such foreign jurisdiction, a buyer for Florida land recover in Florida a brokerage commission?
In early 1980, a representative of J.B. Steelman, Inc. [hereinafter Steelman], a licensed Florida real estate broker, called appellant Lou Tassy [hereinafter Tassy], a Canadian citizen licensed as a real estate broker doing business as Holiday Realty, Ltd., in Ontario, Canada, requesting Mr. Tassy to be a cooperating broker and to locate Canadian purchasers for land in Volusia County, Florida. Tassy agreed and, pursuant to that agreement, brought two prospective Canadian purchasers to Florida to look at the property. While here, personnel of Steelman introduced Tassy to Harry Starr [hereinafter Starr], whom they represented to be the owner of the property in question. After Tassy and his two prospects returned to Canada, Starr called Tassy several times about the possibility of the two prospective purchasers making an offer to buy, but the original prospects lost interest. Some time later, Tassy interested another Canadian resident, a Mr. Maurice Stein, a principal in Terrace Village Construction, Ltd. [hereinafter Terrace Village], in possibly purchasing land in Florida and brought Mr. Stein to, or met him in, Daytona Beach, Florida. While in Florida, Tassy noticed that the Steelman sign on the property had been replaced with another sign and he assumed that the Steelman listing had expired and that other Florida brokers were involved in trying to sell the property. Desiring to establish a cooperating relationship with any Florida broker having a listing on the property, Tassy called the telephone number on the new sign and Starr answered. Starr informed Tassy that he, Starr, was now a registered Florida real estate broker and handling the sale of this land and that he would cooperate with Tassy on a sale of the property if Tassy could find a buyer. Later Tassy drove to Palm Beach and delivered to Starr a written offer to purchase from Mr. Stein. Starr indicated he desired to discuss the offer with his partners and lawyer but he did discuss a commission and the brokers agreed that Tassy would receive an eight percent commission if the prospective sale was consummated. Starr also assured Tassy that he, Starr, was a registered Florida *33 real estate broker, not a salesman. Later, after a conference in Daytona Beach where Starr, Stein, each of their lawyers, and Tassy were all present, the actual owners of the property, Starr Brothers, Inc. and A. Joan Bellm [hereinafter Starr Bros./Bellm], made a written counteroffer to sell that was accepted by Mr. Stein on behalf of Terrace Village. The contract provided that the sellers would pay a brokerage commission to Holiday Realty, Ltd., according to a letter of directions from the sellers to the closing attorney which "irrevocably" directed that, on closing, an eight percent commission was to be paid to Tassy of Holiday Realty, Ltd. The real estate transaction closed, but Starr revoked his directions and disbursement of the brokerage commission was withheld.
Starr Bros/Bellm filed this action for a declaratory judgment against Tassy, Holiday Realty, Ltd., Steelman, and the closing attorney, demanding that a judgment be entered finding: that Steelman was not entitled to commission because he was not a procuring cause of the Starr Bros./Bellm-Terrace Village sale, nor was he a cooperating broker with Tassy as to this sale; that Tassy (Holiday Realty, Ltd.), not being a registered Florida broker, was not entitled to a broker's commission under section 475.41, Florida Statutes; and to further adjudicate that since no one was entitled to the brokerage commission the court should declare that the plaintiffs, as sellers, were entitled to the sum of the commission held by the closing attorney in escrow. The closing attorney, as escrow agent, answered and cross-claimed against the buyer alleging that the buyer was also claiming the escrowed commission sum. The buyer then answered and counterclaimed against the sellers alleging that the contracting parties contemplated that a commission was to be paid and that if it was not to be paid, then the escrowed sum should be returned to the buyer. Steelman and Tassy answered separately, denying various allegations.
The trial court ultimately entered a summary final judgment finding: (1) that section 475.41 Florida Statutes, was constitutional and applied to prevent Tassy and Holiday Realty, Ltd., from recovering a commission, (2) that Steelman was not a procuring cause of the sale in question, (3) that Starr was a registered Florida broker and agent of the sellers and negotiated the sale and agreed to pay Tassy a commission when he knew, or should have known, that section 475.41, Florida Statutes, would prevent Tassy from recovering a commission and that, accordingly, Starr Bros./Bellm had "unclean hands," and therefore, (4) by applying "equitable principles," the escrowed funds should be divided equally between the sellers, Starr Bros./Bellm, and the purchaser, Terrace Village. The trial court specifically found:
C. That though there are some facts which tend to raise a factual issue as to whether or not the defendants, Lou Tassy and Holiday Realty, Ltd., were co-brokers either with one or both of Defendant, J.B. Steelman, Inc., and Harry W. Starr, III, and agent of the Plaintiffs, this Court specifically finds that that possible disputed issue of fact is not material because this Court finds under the law that even if the Defendants, Tassy and Holiday Realty, were co-brokers either with Defendant, J.B. Steelman, Inc., and/or with Harry W. Starr, III, an agent of the Plaintiffs, that under Florida law as cited and contained in the Plaintiffs' memorandum of law, neither could she [sic] still share in a brokerage fee.
Tassy and Holiday Realty, Ltd., appeal the denial of the commission held in escrow. Starr Bros./Bellm cross-appeal the "equitable division" of the escrow fund. We reverse.
Section 475.41, Florida Statutes (1981), is part of the Florida Real Estate Licensing Act and provides:
No contract for a commission or compensation for any act or service enumerated in s. 475.01(3) is valid unless the broker or salesman has complied with this chapter in regard to issuance and renewal of the license at the time the act or service was performed.
*34 The avowed purpose behind this section (and the act in general) is to protect the public from dishonest or unscrupulous real estate operators.[1] As such, it is clear section 475.41 bars a foreign broker (i.e., a broker licensed in a foreign jurisdiction but not in Florida) from collecting a commission for brokerage services when the services are performed in Florida and no licensed Florida broker is involved.[2] However, section 475.41 does not bar a foreign broker from collecting a commission for brokerage services when the services are not performed in Florida and the foreign broker was cooperating with a Florida broker.[3]
However, the facts of this case do not fall completely within either of the above situations. Here, a foreign broker is suing for his brokerage commission where part of the services were performed in Florida but the foreign broker was cooperating with a Florida broker. We hold section 475.41 does not act to bar the foreign broker's suit in this situation, provided that the foreign broker is acting as a co-broker with a Florida broker and part of the foreign broker's services are in good faith actually performed in the jurisdiction where he or she is licensed.
Under these circumstances the public policy of section 475.41, Florida Statutes, is effectuated because under any co-broker arrangement the Florida licensed broker will be legally and professionally responsible for the acts of the cooperating foreign broker as well as for his own acts in the joint venture. The statutory authority of the Department of Professional Regulation and the Florida Real Estate Commission to supervise and police the Florida broker will be sufficient to protect the public in Florida from untrained, unsupervised, dishonest or unscrupulous real estate operators as is the purpose of section 475.41 and the other provisions of chapter 475, Florida Statutes. In this situation to permit the foreign broker to procure prospects where he is licensed and to send or to bring them to Florida and to come to Florida to confer or to work with the Florida licensed co-broker in the furtherance of his co-brokerage arrangement and in the promotion of the interest of the principal for whom the co-brokers are jointly performing services, is in the public interest and should not bar enforcement of the brokerage agreement. Although not in direct conflict, we believe our holding to be irreconcilable with Harris v. McKay, 176 So.2d 572 (Fla. 3d DCA 1965), which holds that under section 475.41, Florida Statutes, when a licensed Florida broker even cooperates with a foreign broker not licensed in Florida, the licensed Florida broker is tainted and cannot recover a commission. We believe this is an unnecessarily harsh construction of the purpose and effect of this statute and is not in the best interest of the public in Florida. Much Florida land is sold to purchasers located in foreign jurisdictions by brokers there who are acting in a professionally cooperating arrangement with Florida brokers. Section 475.25(1)(h), Florida Statutes, expressly permits a licensed *35 broker of this state to share a real estate brokerage commission with a broker licensed or registered under the laws of a foreign state so long as the foreign broker does not violate any law of this state. If in procuring a purchaser in this case Tassy was acting in good faith under a co-brokerage arrangement with a Florida licensed broker then he violated no law.
Therefore, the trial court erred in granting summary judgment while there were outstanding issues of material fact as to whether or not Tassy was cooperating with a Florida licensed broker. Whether or not Steelman may have originally had some type of exclusive right or agency to sell this property which had expired may be immaterial to its entitlement to share a brokerage commission in this case. Also the finding on summary judgment that Steelman was not itself a procuring cause of the sale in question likewise may not be as significant as it may first appear. This is true because of the combined effect of the real estate sales concept of "procuring cause" and of the nature of "cooperating arrangements" between brokers. Whether or not there was a pre-sale bilateral or unilateral contract[4] between the owner and the broker, if an owner accepts the offer of a purchaser who was in fact procured by a broker under circumstances that did, or should have, caused the owner to know that the broker expected the owner to pay a commission, the owner is liable to the broker for a commission. Further, a cooperating arrangement or agreement between two brokers is in the nature of a joint venture between the two professionals and, as to third parties, the acts of each broker in the pursuance of the cooperating agreement is the act of the other. If, while acting under such a cooperating agreement, one of the brokers procures a purchaser, then, insofar as third parties are concerned, both have been the procuring cause of the sale. Therefore, if Tassy, while acting pursuant to a co-brokerage agreement with Steelman, did produce Mr. Stein and this act resulted in the sale, Tassy was the actual procuring cause of the sale and Steelman vicariously (through the agency of his joint venturer and co-broker Tassy) would be the procuring cause of the sale and entitled to a share of the resulting commission pursuant to his agreement with Tassy. Similarly, even though Starr was a principal in Starr Brothers, Inc., the corporate co-owner of the property in question, if Tassy, while acting pursuant to a co-brokerage agreement with Starr, did produce Mr. Stein and this act resulted in the sale, Tassy was the procuring cause of the sale and Starr likewise vicariously (through the agency of his joint venturer and co-broker Tassy) would normally be a part of the procuring cause of the sale and entitled to a share of the resulting commission actually earned by Tassy. The problem is confused here because of the dual role of Starr. At the moment Tassy sat down with Starr in Palm Beach and presented Mr. Stein's offer to purchase, instead of discussing the proposed sale with Tassy as a co-broker would have, Starr seems to have changed his hat and, thinking as an owner and as agent of the owners of the property, negotiated Tassy's brokerage commission on the basis that Starr, would not share in the commission. These facts have not been litigated, but they are susceptible of the conclusion that while Starr had previously been acting as a co-broker with Tassy, Starr, at that moment, as a co-broker, dealt himself out of participating in the brokerage commission in exchange for Tassy agreeing to accept a reduced commission rather than the two brokers participating in and jointly sharing a single full commission. On the other hand if, after full inquiry, a trier of the facts determines that Tassy acted alone as a competing broker he is barred from recovering a commission. This issue should be submitted to a trier of fact for determination.
When the services rendered by the foreign broker are in cooperation with a licensed Florida broker, the foreign broker, as a real party in interest may, when necessary, sue for himself and for the use and *36 benefit of the Florida licensed broker for the brokerage commission due them. See Florida Rule of Civil Procedure 1.210(a). The rights of a foreign broker who has honestly and in good faith procured a purchaser under a cooperating agreement with a Florida broker should not be defeated merely because the Florida broker, for some reason (such as, ignorance, disinterest or conflict of interest) is willing to forego sharing in a commission earned primarily through the efforts of his cooperating foreign broker.
Accordingly, if in performing services as a broker in this case, Tassy in fact was acting in good faith as a cooperating broker with either Florida licensed broker Steelman or Starr, that fact satisfies the requirements of section 475.41, Florida Statutes, as we construe that statute, and Tassy would not be barred from recovering a brokerage commission in this case. Since the summary final judgment itself indicates there is a genuine factual issue as to that matter, it should not have been entered. Thus, the summary judgment is
REVERSED and the cause REMANDED for further proceedings on this issue.
FRANK D. UPCHURCH, Jr. and SHARP, JJ., concur.
NOTES
[1] See, e.g., Geneva Investments, Ltd. v. Trafalgar Developers, Ltd., 274 So.2d 581 (Fla. 3d DCA), cert. discharged, 285 So.2d 593 (Fla. 1973); Pokress v. Tisch Florida Properties, Inc., 153 So.2d 346 (Fla. 3d DCA 1963).
[2] See, e.g., Paris v. Hilton, 352 So.2d 534 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 713 (Fla. 1978), cert. denied, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979). Cf. Bradley v. Banks, 260 So.2d 256 (Fla. 3d DCA 1972) (where appellant was not registered at time he performed brokerage services [opinion unclear whether he was a foreign broker or not], he could not share in the commission).
[3] See, e.g., Krieger v. Ocean Properties, Ltd., 387 So.2d 1012 (Fla. 4th DCA 1980) (where Indiana brokers performed services in Indiana as cooperating brokers with a Florida broker, Indiana brokers could share in the commission); Kagan v. Garfinkle, 312 So.2d 778 (Fla. 3d DCA 1975) (where New York broker performed services in New York as a cooperating broker with Florida broker, New York broker could recover a brokerage commission); Seijo v. Futura Realty, Inc., 269 So.2d 738 (Fla. 3d DCA 1972) (Puerto Rico broker who cooperated with Florida broker was entitled to share for work done in Puerto Rico). Cf. Pokress v. Tisch Florida Properties, Inc., 153 So.2d 346 (Fla. 3d DCA 1963) (Florida broker could recover a brokerage commission even though he had cooperated with foreign broker).
[4] See Mark Realty, Inc. v. Rogness, 418 So.2d 373 (Fla. 5th DCA 1982).