STONE, Judge,
dissenting.
This is an appeal from a summary judgment in favor of the defendants in a suit for a business brokerage commission. Michael Hannan, an individually licensed real estate broker, acting individually and as president of Hannan Associates, Inc., contracted with the president of Home Federal for the payment of a commission upon finding a purchaser for that institution. Han-nan and Hannan Associates, Inc. entered into a cooperating broker arrangement with Tausig, an individually licensed real estate salesman, and Tausig’s licensed real estate broker, co-plaintiff Jordan Realty, Inc. A sale was ultimately consummated with City Federal. Appellees successfully resisted payment of the commission to all plaintiffs on the ground that Hannan Associates, Inc. was not licensed under Chapter 475, Florida Statutes (1985). Appellees contend that the commission was therefore tainted, and so as a matter of public policy, none of the appellants could recover, regardless of their status.
The issues on appeal are whether Han-nan Associates, Inc., pursuant to section 475.17(3), Florida Statutes (1985), was exempt from being licensed during the two year grace period for business brokers on the ground that it was an “individual,” and whether the remaining plaintiffs could recover their commissions, by contract ■ or quantum meruit, where they had a reasonable and good faith belief that Hannan Associates was a validly registered real estate broker. I would reverse on each of these issues.
Prior to 1982 business brokers were not required to be licensed under Chapter 475. As of January 1,1982, the definition of real estate broker was amended to include business brokers. However, all “individuals” engaged in brokering business transfers were granted a two year exemption under section 475.17(3), Florida Statutes (1985), so that they could have that time to qualify as licensed real estate brokers. Hannan individually, therefore, would have been validly engaged as a business broker even if he had not already been a licensed real estate broker. But, unfortunately, he had neglected to register his corporation as a real estate broker under his real estate license, and the statute granting the exemption to existing business brokers did not specifically grant an exemption to their operating corporations, but rather, used the word “individuals.” Nothing has been uncovered in the history of the statute reflecting the legislative intent in regard to existing business broker’s corporations. I find no basis in reason, logic nor policy to conclude that the legislature intended this interpretation or result. To the contrary, it is reasonable to recognize that corporations, already val *236 idly doing business as business brokers, with pre-existing leases, financial obligations and other commitments, would register together with their qualifying principals. There is no reason to conclude that the legislature intended the exempt business brokers during the grace period to lose the benefits of utilizing a corporate conduit for the operation of their offices.
Even if the legislature did intend that business brokers would be unable to continue doing business through their corporations during the exemption period, there is no reason to preclude the remaining plaintiffs in this case from collecting their share of the commission. There is evidence, (which must be taken as true), that Hannan believed his corporation, which was eligible for registration, to have been so registered, and that the co-broker and salesman knew Hannan individually to be a validly registered real estate broker.
Appellees rely upon a number of cases, each of which is distinguishable, as authority that the entire transaction is tainted by the alleged illegality of the involvement of the unlicensed corporation. See Moorings Development Co. v. Porpoise Bay Co., 487 So.2d 60 (Fla. 4th DCA 1986); Paris v. Hilton, 352 So.2d 534 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 713 (Fla.1978), cert. denied, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979); Hanks v. Hamilton, 339 So.2d 1122 (Fla. 4th DCA 1976), cert. denied, 352 So.2d 171 (Fla.1977); Bradley v. Bank, 260 So.2d 256 (Fla. 3d DCA 1972); Harris v. McKay, 176 So.2d 572 (Fla. 3d DCA 1965). Notwithstanding the undisputed public policy properly applied in the above cases, each is distinguishable. The defendants here should not receive a windfall where there are no such public policy considerations to protect.
Florida courts have, in appropriate cases, recognized that not all transactions involving an unlicensed party need be voided. See Tassy v. Hall, 429 So.2d 30 (Fla. 5th DCA 1983); Trum Corp. v. Satterfield, 421 So.2d 608 (Fla. 4th DCA 1982); Morgan v. Glassman, 285 So.2d 673 (Fla. 3d DCA 1973), cert. denied, 292 So.2d 21 (Fla.1974); Pokress v. Tisch Florida Properties, Inc., 153 So.2d 346 (Fla. 3d DCA 1963). This should particularly be the case in a claim for quantum meruit where all claimants have acted in good faith.
The case of Moorings Development Co. v. Porpoise Bay Co. is distinguishable, because the appellant does not contend that his unlicensed corporation is entitled to a commission, either by contract or quantum meruit, unless it were covered as a business broker by the two year exemption.
In Trum Corp. v. Satterfield, this court held that participation of a non-active or unlicensed person in a real estate contract does not result in a commission forfeiture where all of the persons performing the services were registered. In this case, as in Trum, the only persons doing any acts with respect to the transaction were active licensed brokers. Therefore, there being no reason or policy requiring a forfeiture, I would reverse.