ALTENBERND, Judge.
Revac appeals a judgment on directed verdict which disallowed its claim for a real estate commission because it was not entitled to enforce its commission contract under section 475.41, Florida Statutes (1981). Although Revac is a Swiss corporation which conducted most of its sales activities in Europe, we find that its activities in Florida were sufficient to invoke chapter 475 and, thus, we affirm the trial court.
In the fall of 1981, the limited partnership which owned Sunrise Bay Resort, a timeshare condominium on Marco Island, contacted Revac about selling timeshare weeks for the resort. Revac had previously sold timeshare units in Europe. It is undisputed that Revac was not registered as a real estate broker in Florida and none of its principals were licensed in Florida. *4 Revac did not associate any licensed Florida real estate broker to assist in this project.
Revac negotiated a brokerage commission agreement with the limited partnership in Switzerland. The commission agreement contemplated the sale of 100 timeshare weeks in the Florida condominium. The sales which were contemplated were not intended to be long-term sales. Instead, Revac would convince Europeans to purchase the timeshare weeks from the Florida limited partnership, subject to a “repurchase agreement” which required the limited partnership to repurchase the units for 130% of their original purchase price after one year and one day. Revac would receive a 20% commission from the Florida limited partnership for its services.
The commission agreement provided that it would only become effective upon the final negotiation and approval of the repurchase agreement. After Revac had obtained tentative sales of a few timeshare weeks from some of its regular customers, Revac sent Albert Carasso, its managing director, to Florida to visit the property and to negotiate the details concerning the repurchase agreement. Ultimately, the repurchase agreement which Mr. Carasso negotiated in Florida was executed by Revac in Switzerland. The repurchase agreement was entered into between the limited partnership as “buyer” and Revac, “including all individuals who purchased through Re-vac,” as “owner.”
Mr. Woodward was the attorney for the limited partnership which owned the resort. While Mr. Carasso was in Florida, Mr. Woodward prepared and executed a handwritten agreement under which he agreed to disburse to Revac from his escrow account the 20% real estate commission at the time of the closing at which Revac’s clients purchased the timeshare weeks.
After these agreements had been executed, Revac convinced many of its clients to sign purchase agreements for the timeshare weeks. Although executed in foreign countries, these purchase agreements attempted to comply with Florida law and contained references to the condominium disclosure requirements of section 718.503,-Florida Statutes (1981). These purchase agreements contemplated a closing in Florida on the Florida real estate with the issuance of a Florida title insurance policy. At least some of the closings took place. Mr. Woodward, however, released the funds in his escrow account to his client rather than to Revac. Revac sued him for commissions in the approximate amount of $165,000. Although Revac had not qualified to do business in Florida during the period when it sold the timeshare units, it did qualify to do business in Florida in order to sue Mr. Woodward.
Section 475.41, Florida Statutes (1981), invalidates any contract for a real estate commission for services enumerated in section 475.01(3), unless the broker is licensed in Florida. Section 475.01(3) provides a lengthy definition of “broker,” which broadly includes any person who, for another, sells, buys, or negotiates the sale of any interest in real property. Any corporation which acts as a broker is required to register with the Board of Real Estate. § 475.15, Fla.Stat. (1981). There is no question in this case that Revac was acting as a broker. The only question is whether its activities had a sufficient Florida involvement to require a Florida license.
In Paris v. Hilton, 352 So.2d 534 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 713 (Fla.1978), cert. denied, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979), the court refused to enforce a commission contract between two Georgia residents. In that case, a Georgia broker contracted with a Georgia purchaser to provide services in connection with the purchase of Florida real property. The court refused to enforce the contract because the Georgia broker had made a one-day visit to the Florida property, had helped prepare the written offer to purchase the Florida property, had negotiated conditions of the contract in Florida, had made numerous telephone calls to Florida, and had attended the Florida closing. See also Cooper v. Paris, 413 So.2d 772 (Fla. 1st DCA 1982).
We believe that the facts in this case are more compelling than the facts in the Hil *5 ton case. Revac contracted to receive commissions from a Florida limited partnership. Instead of a single sale, the commission agreement contemplated one hundred closings in Florida. The repurchase agreement contemplated one hundred repurchases in Florida. Like the broker in the Hilton case, Revac sent its agent to Florida to see the property and negotiate the critical repurchase agreement. Revac helped prepare the purchase agreements for its clients and had extensive communication with the resort and its attorney.
This ease is not similar to Winchester v. Amrhein-Hatcher, Inc., 436 So.2d 274 (Fla. 4th DCA 1983), which involved a co-brokerage arranagement and a foreign broker who apparently handled a single transaction as a family member while on a personal vacation in Florida. When a foreign broker associates with a Florida broker, Florida’s interests are better protected and a different analysis applies. Krieger v. Ocean Properties, Ltd., 387 So.2d 1012 (Fla. 4th DCA 1980); Tassy v. Hall, 429 So.2d 30 (Fla. 5th DCA 1983).
This case is also distinguishable from Lucas v. Gulf & Western Industries, Inc., 666 F.2d 800 (3rd Cir.1981). In that case, a New Jersey broker entered into a real estate commission contract with a non-Florida corporation, located in Pennsylvania, but owning land in Florida. That court refused to apply section 475.41, Florida Statutes (Supp.1978), in the absence of any evidence of services performed in the state of Florida.
Chapter 475 is intended “to protect the public from potential economic loss” caused by incompetent or dishonest real estate practitioners. § 475.001, Fla.Stat. (1981). Especially in transactions involving condominiums and timesharing plans, a special knowledge of Florida law is necessary. Chs. 718, 721, Fla.Stat. (1981). To protect the public from economic loss, it is important for Florida to maintain and develop a good reputation concerning investments in Florida real estate, without regard to the location or nationality of the investors. While Florida can realistically provide protection for persons damaged by licensed real estate brokers, it is difficult to protect persons from unregulated brokers. See §§ 475.482-.483, Fla.Stat. (1981). Thus, we hold that Revac’s undisputed activities in Florida were sufficient to invoke section 475.41, Florida Statutes (1981), precluding the enforcement of its claim for commission.
Affirmed.
RYDER, A.C.J., and SCHOONOVER, J., concur.