914 So.2d 479 (2005)
METEOR MOTORS, INC., d/b/a Palm Beach Acura, Appellant,
v.
THOMPSON HALBACH & ASSOCIATES, an Arizona corporation, Appellee.
No. 4D04-2985.
District Court of Appeal of Florida, Fourth District.
November 2, 2005.
Rehearing Denied December 8, 2005.
*480 Nancy A. Copperthwaite and Lawrence D. Silverman of Akerman Senterfitt, Miami, for appellant.
*481 Morris G. (Skip) Miller of Adorno & Yoss, LLP, West Palm Beach, for appellee.
GROSS, J.
The issue in this case is whether a corporate business broker which put the buyer and seller together in the sale of an automobile dealership is precluded from recovering a brokerage fee because it did not comply with the licensing requirements of Chapter 475, Florida Statutes (2004). We hold that section 475.41, Florida Statutes (2004), prevents the broker from enforcing its fee contract and reverse the final judgment entered in favor of the broker.
Meteor Motors, Inc., owned Palm Beach Acura, an automobile dealership. In April, 2001, Meteor entered into an agreement with Thompson Halbach & Associates, an Arizona corporation, in which it agreed to pay Thompson a commission of 5% of the closing price if Thompson found a buyer for the dealership. The contract contemplated only a sale of stock and not any transfer of real estate.
Thompson is located in Arizona and is in the business of bringing together buyers and sellers of automobile dealerships. Christopher Halbach was a principal and employee of Thompson. Neither the corporation, Thompson, nor any of its principals was a licensed real estate broker in Florida at any time relevant to this case.
After the contract was signed, Halbach obtained financial statements and other information from Meteor pertaining to the business. Halbach then contacted various entities which he thought might be interested in purchasing the dealership. Among those contacted was the Craig Zinn Automotive Group, a Florida based car dealership, which ultimately purchased Palm Beach Acura from Meteor Motors. Halbach transmitted the information obtained from Meteor to Zinn so that Zinn could evaluate the feasibility of purchasing the dealership. During this time, Halbach kept Meteor advised of its discussions with potential buyers, including Zinn. Halbach did not participate in negotiations; the principals of the respective companies met to negotiate the terms of the sale. Halbach characterized his role in the transaction as bringing the seller and buyer together.
In August 2001, Meteor requested that Thompson "no longer represent [Meteor] in the marketplace." In September, 2001, Meteor and Zinn entered into an agreement whereby Zinn purchased the stock of Meteor for $5,000,000. The deal closed in December, 2001, and Thompson was not paid its commission.
Thompson filed suit to recover its commission. The count that went to trial was for breach of contract. Among Meteor's affirmative defenses was that the contract was unenforceable because Thompson was not licensed pursuant to Chapter 475, Florida Statutes.
After a bench trial, the circuit court concluded that Meteor had breached its contract with Thompson and that Thompson was entitled to recover its 5% commission of $250,000. The court rejected the defense of noncompliance with Chapter 475 by ruling that the statute applies to a "person" and that Thompson was "an Arizona corporation and not a `person' as intended by § 475.01." The trial court also observed that section 475.001 spoke of real estate brokers, sales persons, and schools, concluding that the statute did not apply to business brokers.
Whether Chapter 475 applied in this case was crucial because the statute declares a contract with an unlicensed broker to be invalid. Section 475.41 provides that "[n]o contract for a commission or compensation for any act or service enumerated in *482 s. 475.01(3) is valid unless the broker or sales associate has complied with this chapter in regard to issuance and renewal of the license at the time the act or service was performed." Section 475.01(3) defines "operating" as a broker as meaning "the commission of one or more acts described in this chapter as constituting or defining a broker."
On appeal, Thompson does not defend the trial court's ruling that Chapter 475 has no application because it applies to persons and not to corporations. This is perhaps because Chapter 475 clearly applies to corporations. Section 475.15 requires a corporation "which acts as a broker" to "register with the commission" and "renew the licenses or registrations of its. . . officers and directors for each license period." Section 475.01(1)(a) indicates that the term "broker" includes any person who is the officer or director of a corporation. Section 475.42(1)(a) provides that a corporation may be criminally punished for operating as a broker or sales associate without a "valid and current active license." Finally, section 1.01(3), Florida Statutes (2004), states that "where the context will permit" the word "person" in a Florida statute shall be construed to include "corporations." Nothing in Chapter 475 calls for a deviation from this general rule of construction. Thus, the term "person" in section 475.01(1)(a) includes a corporation.
A cursory reading of Chapter 475 leads to the conclusion that the statute concerns only sales of real estate. The Chapter is entitled "Real Estate Brokers, Sales Associates, Schools, and Appraisers;" section 475.001 declares the public purpose to "regulate real estate brokers, sales associates, and schools in this state." However, a closer reading of the statute demonstrates that it regulates business brokers without any connection to real estate.
Section 475.01(1)(a) defines a "broker" as including "a person who, for another, and for a compensation or valuable consideration. . . attempts or agrees . . . to negotiate the sale, exchange, purchase . . . of business enterprises or business opportunities" or who "takes any part in the procuring of sellers, purchasers, lessors, or lessees of business enterprises or business opportunities." Section 475.01(1)(i) defines "real property" or "real estate" as including "any interest in business enterprises or business opportunities." In 1982, the legislature expanded these sections to include business brokers. See Ch. 80-405, § 3, at 1603, Laws of Fla. There is nothing ambiguous about the statute's inclusion of non-real estate transactions under its purview. The statute must be given its plain and obvious meaning. See Donato v. AT & T Co., 767 So.2d 1146, 1150 (Fla.2000). For this reason we reject Thompson's assertion that Chapter 475 does not apply to this transaction because it did not involve real estate.
Thompson next argues that Chapter 475 does not apply because Halbach performed the contract from Scottsdale, Arizona, using telephone and e-mail to contact potential buyers. However, Chapter 475 applies to a foreign broker who provides brokerage services or conducts brokerage activity in Florida. See Previews, Inc. v. Murff, 502 So.2d 1317, 1318 (Fla. 1st DCA 1987).
Previews focused on the activities of a Georgia real estate broker who solicited a Florida buyer to purchase Florida real property. The solicitation consisted of sending to the buyer an information sheet, a cover letter, a map showing the location of the property, and a study regarding "prospective uses of the property." Id. at 1318. Previews held that section 475.41 *483 precluded the Georgia broker from enforcing his fee contract because the "foreign broker's activities were directed toward the solicitation of a purchaser in Florida" such that he had "engaged in brokerage activities" in Florida without a license. Id.; see Revac, S.A. v. Arthur V. Woodward, P.A., 550 So.2d 3, 5 (Fla. 2d DCA 1989).
This case is similar to Previews. By telephone, fax, and email, Thompson solicited potential Florida purchasers for a Florida business. Zinn, the ultimate purchaser, is a Florida corporation. Like the Georgia broker in Previews, Thompson engaged in brokerage activities in Florida that brought it within the purview of Chapter 475. This case is distinguishable from a line of cases cited by Thompson, which involve a licensed Florida broker affiliated with a foreign broker, who performs brokerage services within his own jurisdiction. See, e.g., § 475.25(1)(h), Fla. Stat. (2004); Winchester v. Amrhein-Hatcher, Inc., 436 So.2d 274, 275-76 (Fla. 4th DCA 1983); Tassy v. Hall, 429 So.2d 30 (Fla. 5th DCA 1983).
Thompson also appears to argue that sections 320.60-.70, Florida Statutes (2004), pertaining to the licensing of motor vehicle dealers, preempt the application of Chapter 475 to a broker's involvement in the sale of an automobile dealership.
In order for one statute to preempt another, "express and unambiguous preemption language" must be present. See Kligfeld v. State, 876 So.2d 36, 38 (Fla. 4th DCA 2004). Implied preemption is disfavored in Florida. See Flo-Sun, Inc. v. Kirk, 783 So.2d 1029, 1035 (Fla.2001).
Sections 320.60-.70 contain neither any express language of preemption, nor any language implying preemption with regard to brokers involved in the sale of motor vehicle dealerships. Thompson contends that the requirements for the licensing, ownership, and operation of motor vehicle dealerships give rise to preemption of business brokers involved in the sale of dealerships. However, Thompson points to no portion of Chapter 320 purporting to regulate brokers who deal in the sale of motor vehicle dealerships. Thompson cites to section 320.643, but that statute regulates the holders of dealership licenses and franchises, not the brokers who deal in their transfer. There is no basis in Chapter 320 to support preemption.
Next, Thompson contends that its conduct did not fall within the traditional definition of a "broker" as one who "negotiates contracts for purchase and sale;" rather it served "as a conduit for the exchange of relevant information between Meteor Motors and prospective purchasers." However, Thompson's conduct fits within the statutory definition of a "broker." Section 475.01(1)(a) defines a "broker" as one ". . . who takes any part in the procuring of sellers, purchasers, lessors, or lessees of business enterprises or business opportunities or the real property of another. . . ." (Emphasis added). An entity operates as a broker when it engages in the ". . . commission of one or more acts described in this chapter as constituting or defining a broker, broker associate, or sales associate. . . ." § 475.01(3), Fla. Stat. (2004). In Schickedanz Bros.-Riviera Ltd. v. Harris, 800 So.2d 608 (Fla.2001), the Florida supreme court observed that the Chapter 475 definition of a broker is broader than "one who directly procures a purchaser." Here, Thompson's conduct fits within that broad statutory definition.
The final judgment is reversed and the case is remanded to the circuit court with directions to enter final judgment in favor of Meteor Motors.
*484 STONE, J., and SCOLA, JACQUELINE H., Associate Judge, concur.