[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-13146

Non-Argument Calendar

_____

MATTHEW HAYDEN,

Plaintiff-Counter Defendant-Appellee,

*versus*

STEVEN F. URVAN,

Defendant-Counter Claimant
Third Party Plaintiff-Appellant,

BREW FIRST, INC., et al.,

Third Party Defendants-Counter Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-82051-WM

_____

Before JORDAN, LUCK, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

Defendant-Appellant Steven Urvan appeals the denial of his renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), after a jury found him liable for unjust enrichment under Florida law and awarded Plaintiff-Appellee Matthew Hayden $500,000 as a "finder's fee" for making introductions that led to the sale of Urvan's business. On appeal, Urvan argues that the district court erred because no reasonable jury could find that (1) Hayden presented enough evidence to support his unjust enrichment claim and damages award, (2) Hayden did not engage in activities that required him to register as a broker under Florida law, and (3) state and federal law do not bar Hayden from recovery for these activities as an unregistered securities broker or dealer. After careful review, we affirm.

## I.

Urvan is an entrepreneur who has started several businesses. Among those businesses is GunBroker.com (GunBroker), an online auction marketplace for guns, ammunition, and hunting equipment. Hayden is a consultant who provides business

development services to clients. Hayden and Urvan have known each other professionally for about a decade and have invested in companies together.

In March 2020, Hayden offered to help Urvan find a buyer for GunBroker. In June 2020, Hayden emailed Urvan a draft consulting agreement. The agreement proposed a finder's fee of 1% of the enterprise value of the sale if Hayden made an "introduction to a company, investment group, merger candidate, or acquirer," that led to "a successful acquisition of GunBroker." In total Hayden introduced Urvan to seventeen companies. The parties never signed the agreement. Urvan told Hayden that he did not want to sign the agreement because he had hired an investment banking firm, Houlihan Lokey, to handle the sale.

After Houlihan Lokey failed to find a buyer, Hayden and Urvan began working together again. In December 2020, Hayden introduced Urvan to the co-founder and president of Maxim, an investment bank. From there, Maxim identified Ammo, Inc., as a potential buyer for GunBroker. In April 2021, Urvan agreed to sell GunBroker to Ammo for a total value of $240 million—$50 million in cash, 20 million shares of Ammo stock (valued at $7 a share for a total value of $140 million), and Ammo's assumption of $50 million of GunBroker's debt.

At issue in this case is the unsigned commission agreement between Urvan and Hayden. When Urvan refused to pay Hayden the $2.4 million fee (representing 1% of the total value of the transaction), Hayden sued Urvan for unjust enrichment. In response,

Urvan raised several affirmative defenses based on illegality, claiming Hayden could not be compensated for these activities because they required him to register as a broker or investment adviser with the U.S. Securities and Exchange Commission (SEC) or the State of Florida.

After a four-day trial, the jury awarded Hayden $500,000, equaling 1% of the $50 million cash payment that Urvan received as part of the GunBroker sale. The jury also found that Urvan did not prevail on his affirmative defenses under the Florida Securities and Investor Protection Act (FSIPA), Fla. Stat. § 517, the Florida Real Estate Licensing Act, Fla. Stat. § 475, or the Securities Exchange Act (Exchange Act) of 1934, 15 U.S.C. § 78(a). Urvan timely appealed.

## II.

"We review a district court's denial of a motion for judgment as a matter of law *de novo*, applying the same legal standards used by the district court." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 765 (11th Cir. 2000). Federal Rule of Civil Procedure 50 allows a district court to grant a motion for a judgment as a matter of law if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party." Fed. R. Civ. P. 50(a). "The standard is the same whether the motion is made before the case is submitted to the jury or renewed after the jury's verdict." *Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1230 (11th Cir. 2020).

We review all the evidence in the record and draw all reasonable inferences in the nonmoving party's favor. *Booth v. Pasco Cnty.*, 757 F.3d 1198, 1206 (11th Cir. 2014). We will not overturn a jury's verdict unless "no rational trier of fact could have reached the same conclusion based upon the evidence in the record." *Mamani*, 968 F.3d at 1230 (quotation marks omitted).

## III.

In this diversity case, we apply the substantive law of the forum state, Florida. *See James River Ins. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 n.1 (11th Cir. 2008). "[W]e follow decisions by the intermediate appellate court of the state except where there is strong indication that the state supreme court would decide the matter differently." *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1086 (11th Cir. 2004). Unjust enrichment claims in Florida require the plaintiff to prove

> 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

*Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. Dist. Ct. App. 2006).

On appeal, Urvan argues that a reasonable jury could not find that Hayden conferred a separate benefit from the one Maxim

provided, and that the district court upheld an improper damage calculation by the jury. We address each argument in turn.

### A.

First, Urvan claims that he already paid Maxim for the benefit he received (GunBroker's sale) and Hayden cannot recover for providing the same benefit. "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. Dist. Ct. App. 2007).

Here, there was sufficient evidence for a reasonable jury to find that Hayden and Maxim provided separate benefits to Urvan. As the district court noted, Hayden introduced Urvan to Maxim Group, who then connected Urvan to Ammo, Inc. Maxim Group's President testified that the deal "wouldn't have happened without Hayden making the introduction." And Hayden presented other evidence of his efforts to find Urvan a buyer or investment bank, such as phone records of calls introducing Urvan to different firms. As the jury had ample evidence to decide in Hayden's favor on this issue, the district court did not err in upholding its finding.

### B.

Urvan also claims that Hayden did not adequately establish damages, and that the jury's damage calculation was unmoored from the evidence. "Damages for unjust enrichment may be valued based on either (1) the market value of the services; or (2) the value of the services to the party unjustly enriched." *Alvarez v. All Star Boxing, Inc.*, 258 So. 3d 508, 512 (Fla. Dist. Ct. App. 2018). "[T]he

jury enjoys substantial discretion in awarding damages within the range shown by the evidence, and while the jury may not pull figures out of a hat, its verdict does not . . . so long as a rational basis exists for the calculation." *United States v. Sullivan*, 1 F.3d 1191, 1196 (11th Cir. 1993).

Here, the district court did not err in upholding the jury's damage award because the jury had a rational basis for its calculation. Hayden testified that Urvan said the 1% finder's fee which Hayden proposed "seem[ed] fair." The jury did not act erroneously in weighing this testimony over other evidence. *See Taxinet Corp. v. Leon*, 114 F.4th 1212, 1221 (11th Cir. 2024). Urvan told the jury that he got $50 million in cash and Ammo shares which were originally valued at $140 million. Then, Urvan explained that the shares of Ammo are restricted, and he suggested that these shares were not worth much, if anything, because he would not be able to sell them for such a long time. The only liquid consideration he received was the $50 million in cash. These facts support the jury's logic in awarding Hayden 1% of the $50 million.

## IV.

We turn to Urvan's illegality affirmative defenses. At trial, Urvan argued that Hayden's claim is barred because Hayden acted as a broker or a dealer in the transaction at issue, which required Hayden to register as a broker under federal law or as a dealer under Florida law. Specifically, Urvan argues that the FSIPA, the Florida Real Estate Licensing Act, and the Exchange Act prevented Hayden from receiving a "finder's fee" or commission for these

8                    Opinion of the Court                    24-13146

transactions. But none of Urvan's defenses are viable. We address each in turn.

*A.*

Urvan first argues that Hayden violated chapter 475 of the Florida Statutes because he acted as a "business broker" without registering with the State of Florida. *See* Fla. Stat. § 475.41. Chapter 475 defines a broker as "a person who, for another, and for a compensation or valuable consideration . . . attempts or agrees to . . . negotiate the sale, exchange, purchase, or rental of business enterprises or business opportunities." Fla. Stat. § 475.01(1)(a).

In most cases, Florida courts construe this definition more broadly than "one who directly procures a purchaser." *See, e.g.*, *Meteor Motors, Inc. v. Thompson Halbach & Assocs.*, 914 So. 2d 479, 482–84 (Fla. Dist. Ct. App. 2005) (quoting *Schickedanz Bros.-Riviera Ltd. v. Harris*, 800 So. 2d 608 (Fla. 2001)). This is especially true "where the public is affected" because "the purpose of the statute [is] to protect the public in general from untrained and unsupervised real estate operators." *Morgan v. Glassman*, 285 So. 2d 673, 675 (Fla. Dist. Ct. App. 1973).

But not all transactions involving an unlicensed party must be voided. *See, e.g.*, *Tassy v. Hall*, 429 So. 2d 30, 34 (Fla. Dist. Ct. App. 1983). Florida courts have declined to strictly construe the statute and invalidate contracts where "the defendants would gain an unconscionable advantage by avoiding a just obligation which they had contracted to pay" and "[n]o protection of the public would be accomplished." *E.g. Morgan*, 285 So. 2d at 675.

Here, the district court correctly upheld the jury's decision to refuse to apply section 475.41 to invalidate Hayden's fee. Even if Hayden acted as a "broker" the statute still would not bar him from unjust enrichment compensation. Applying the statute to avoid the contract would not protect the public because this is not a case where the public is "being forced to deal with [a] dishonest or unscrupulous" broker. *Pokress v. Tisch Florida Properties, Inc.*, 153 So. 2d 346, 350 (Fla. Dist. Ct. App. 1963). Urvan is a sophisticated businessman with knowledge of the industry and a long-term professional relationship with Hayden.

And voiding the contract would allow Urvan to gain an unjustified advantage by avoiding an obligation which he agreed to pay. *See Morgan*, 285 So. 2d at 675. Urvan admitted in his testimony that he knew it would be illegal to pay an unlicensed broker a commission. Despite knowing that Hayden was unlicensed, Urvan chose to work with Hayden under the pretense that Urvan would pay Hayden a commission. The district court did not err in finding the jury's rejection of this affirmative defense was supported by evidence, and that under the facts of this case, "it would be highly formalistic and unfair" to allow Urvan to escape liability on this "tenuous defense."

## B.

Urvan next argues that as an unregistered dealer, the FSIPA bars Hayden from receiving compensation for introducing Maxim to Urvan. FSIPA defines a "dealer" as "a person, other than an associated person of a dealer, that engages, for all or part of the

person's time, directly or indirectly, as agent or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." Fla. Stat. § 517.021(12)(a).

Urvan misconstrues "directly or indirectly" to suggest that anyone indirectly related to a transaction is within its scope. *See id.* But the "as agent or principal" clause modifies "directly or indirectly" indicating that a person must act at least in part as an agent or principal in the exchange of securities to be considered a "dealer." *See id.* An agent can only act as a dealer when they have the capacity to convey the security on behalf of the principal. *Id.* Urvan never gave Hayden the authority to deal GunBroker stock. At no point was Hayden involved in the negotiations for the sale of GunBroker stock, nor did he ever claim to be able to buy, sell, or issue stock on behalf of GunBroker or Urvan. The district court was correct in dismissing this defense because a reasonable jury could find that Hayden was not acting as a dealer.

### C.

Urvan's third and final defense is that Hayden violated the Exchange Act, which makes it unlawful for unregistered brokers to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security." 15 U.S.C. § 78o(a)(1). A contract that violates "any provision" of the Exchange Act is "voidable at the option of the innocent party." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 386 n.8, 387–88 (1970); 15 U.S.C. § 78cc(b).

A "broker" is "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C.

§ 78(a)(4)(A). Evidence that may indicate an individual has acted as a broker include "regular participation in securities transactions, employment with the issuer of the securities, payment by commission as opposed to salary, history of selling the securities of other issuers, involvement in advice to investors and active recruitment of investors." *SEC v. George*, 426 F.3d 786, 797 (6th Cir. 2005); *see also SEC v. Feng*, 935 F.3d 721, 732 (9th Cir. 2019); *SEC v. Collyard*, 861 F.3d 760, 766 (8th Cir. 2017).

Here, Hayden did not negotiate directly with GunBroker or Ammo for the stock purchase, nor provide specific advice about the investment. He was not employed by either entity. He is also not a regular participant in securities transactions but a business consultant. His business model is not built around charging a small commission on high volumes of transactions. *SEC v. Keener*, 102 F.4th 1328, 1334 (11th Cir. 2024). He did not hold himself out as a broker. *Id*. The district court did not err in upholding the jury's finding because the jury had ample evidence to find that Hansen did not act as a broker when he introduced Urvan to Maxim to help him find a buyer for GunBroker.

## V.

Urvan has not met his burden to show that no reasonable jury could find for Hayden on his unjust enrichment claim or against Urvan on his affirmative defenses. Thus, we affirm the district court's denial of his renewed motion for judgment as a matter of law.

**AFFIRMED.**