746 So.2d 1152 (1999)
Robert HARRIS, and Real Estate Marketing And Consulting, Inc., a Florida corporation, Appellants,
v.
SCHICKEDANZ BROS.-RIVIERA LTD., a Florida Limited Partnership, and Schickedanz Bros.-Palm Beach, Ltd., a Florida Limited Partnership, and Schickedanz Enterprises, Inc., the corporate general partner of Schickedanz Bros.-Riviera Ltd., and Schickedanz Bros.-Palm Beach, Ltd., Appellees.
No. 98-3854.
District Court of Appeal of Florida, Fourth District.
November 17, 1999.
Rehearing Denied January 6, 2000.
*1153 Michael J. Ryan and Thomas F. Ryan, Juno Beach, for appellants.
Rod Tennyson of Rod Tennyson, P.A., West Palm Beach, for appellees.
HAZOURI, J.
Robert Harris ("Harris") and Real Estate Marketing and Consulting, Inc. ("Re-Mac") appeal the dismissal with prejudice of their five-count second amended complaint ("complaint") filed against Schickedanz Bros.Riviera Ltd. ("Riviera"), Schickedanz Bros.-Palm Beach, Ltd. ("Palm Beach"), and Schickedanz Enterprises, Inc. ("Schickedanz"), Riviera's and Palm Beach's corporate general partner. Appellants concede in their brief that the trial court properly granted appellees' motion to dismiss Count I. The trial court dismissed Counts II, III, and IV as in violation of section 475.42(1)(d), Florida Statutes (1993), and its prohibition against real estate salespersons maintaining an action for compensation in connection with a real estate brokerage transaction. Count V was dismissed as violative of the statute of frauds. We affirm the dismissal of Count III and reverse the dismissal of Counts II, IV, and V.
The complaint alleges that on July 31, 1993, Harris and Riviera entered into a brokerage and marketing agreement concerning Riviera's Woodbine real estate development ("original contract"); in August 1993 Harris and Palm Beach executed an agreement for Harris to perform marketing consulting service for Palm Beach's real estate projects ("consulting contract"); and ReMac advanced sums of money on behalf of Riviera which Riviera agreed to repay.
The original contract provided for Harris to perform three different services. First, Harris was to procure purchasers and obtain contract offers for Riviera's residential units at Woodbine in exchange for a two percent real estate commission. Second, Harris was responsible for marketing Woodbine by preparing budgets for advertising, creating advertisements, and soliciting bids for the furnishing of model homes. Harris was to perform these marketing services without further compensation in addition to the promise to pay the real estate commission set forth above. The third service was described in the Bonus Incentive Provision. Harris was to be paid a bonus commission if he kept marketing expenses below a certain percentage of gross sales. There was a separate formula set forth in the original contract from which to calculate Harris's commission on the savings.
After the original contract was terminated in July or August of 1995, Harris alleges that Riviera reaffirmed the original contract provision for an incentive bonus and memorialized it by continuing to give Harris printouts of total marketing expenditures as required by the original contract provision. Harris alleges he continued to perform until March 1997 when his services were terminated.
In Count II for breach of contract Harris demands payment of his bonus incentive commission for any savings afforded Riviera by Harris. The trial court cited section 475.42(1)(d), Florida *1154 Statutes (1993),[1] as its basis for dismissing this count. That section prohibits a real estate salesman from maintaining an action for a commission in connection with a real estate brokerage transaction. Section 475.01(c) and (d), Florida Statutes (1993)[2] (now (a) and (k), respectively), set forth the definitions of a broker and a salesman. These definitions provide that one "who takes any part in the procuring of ... purchasers ... of ... the real property of another ..." is a real estate broker or salesman. Black's Law Dictionary defines "procure" with respect to brokers as "to find or introduce;said of a broker who obtains a customer. To bring the seller and buyer together so that the seller has an opportunity to sell." BLACK'S LAW DICTIONARY 1208 (6th ed.1990). In working for a developer, it might be argued that any services Harris performs would ultimately result in the procuring of real estate purchasers. However, we find that the statutory definition of real estate broker or salesman is confined to one who directly procures a purchaser not whose services incidentally result in a real estate brokerage transaction.
In Hardcastle Pointe Corp. v. Cohen, 505 So.2d 1381, 1384 (Fla. 4th DCA 1987), this court held that "services for site planning, researching, assisting in preparation of a site plan, consulting, and proposing a name for the project are not specifically enumerated in the statute." Overseeing the marketing expenses of a real estate development in order to save the developer money is also not enumerated in the statute. The services under the Bonus Incentive Provision for which Harris alleges he is entitled to payment are not real estate sales or brokerage services as defined in sections 475.01(1)(c) & (d), Florida Statutes (1993). The trial court erred in dismissing on that basis.
Riviera argues that the dismissal was proper because the alleged agreement was a parol agreement and it violated the statute of frauds, section 725.01, Florida Statutes (1993), which prohibits an action upon any agreement not to be performed within one year from its inception. An exception to this prohibition exists. In Gerry v. Antonio, 409 So.2d 1181, 1183 (Fla. 4th DCA 1982), this court held:

*1155 When an oral contract has been fully performed by one party, the statute of frauds may not be employed as a defense. The statute of frauds also may not be invoked where non-performance of a contract's original terms has been occasioned by an oral modification and the contract as modified has been performed.
Harris alleges in the complaint that he completely performed and then Riviera terminated the original contract without cause and changed its accounting practices, thereby preventing Harris from receiving his bonus. This is sufficient to place the contract within the exception and outside the statute of frauds. Harris's allegations in Count II state a cause of action for his incentive bonus and it should not have been dismissed. See Hiatt v. Vaughn, 430 So.2d 597 (Fla. 4th DCA 1983).
Count III is Harris's action in quantum meruit for the marketing services rendered under the original contract which he argues were not within the definition of a real estate brokerage transaction as defined in section 475.01(c), Florida Statute (1993). Payment for these services was included within the commissions paid for the real estate transactions provided for in the same contract.
Harris may not maintain an action for quantum meruit for services he performed while performing under an express contract between the parties. "It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." Kovtan v. Frederiksen, 449 So.2d 1 (Fla. 2nd DCA 1984); Hoon v. Pate Constr. Co., 607 So.2d 423, 427 (Fla. 4th DCA 1992).
In count IV Harris alleges that Palm Beach breached the consulting contract under which Harris was to prepare budgets for advertising the named residential developments, oversee development of these advertisements, solicit bids for the furnishing of model homes, prepare brochures, coordinate the "Grand Opening," design and set up the temporary sales trailer, and other services of a similar nature. As discussed above, Harris was not directly procuring purchasers. He was not required to appraise, auction, sell, exchange, buy, rent, or offer any real property. He also was not advertising that he was in the business of performing those services. See § 475.01(a), Fla. Stat. (1993). The services required by the consulting contract do not fit within the statutory definition of real estate services. The trial court erred when it found Harris was acting as a real estate salesman under the consulting contract and Count IV should not have been dismissed.
The last count of Harris's and ReMac's complaint is for sums advanced by ReMac on behalf of Riviera which Riviera agreed to repay. The trial court dismissed this action on the grounds that there was a violation of the statute of frauds provisions in sections 671.206 and 687.0304, Florida Statutes (1993).
Section 671.206, which is part of the U.C.C., provides:
(1) Except in the cases described in subsection (2) of this section a contract for the sale of personal property is not enforceable by way of action or defense beyond $5,000 in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent.
(2) Subsection (1) of this section does not apply to contracts for the sale of goods (s.672.201) nor of securities (s.678.319) nor to security agreements (s.679.203).
The agreement at issue is not a contract for the sale of personal property. This statute is not applicable to this cause of action for money lent.
*1156 The other statute cited by the trial court is section 687.0304, entitled Credit Agreements, which provides:
(1) DEFINITIONS.For purposes of this section:
(a) "Credit agreement" means an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation.
(b) "Creditor" means a person who extends credit under a credit agreement with a debtor.
(c) "Debtor" means a person who obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor.
2) CREDIT AGREEMENTS TO BE IN WRITING.A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
This statute is also inapplicable. ReMac is not a debtor who is trying to maintain an action on a credit agreement. ReMac is a creditor suing for money owed. The trial court erred in dismissing Count V.
Based upon the foregoing, we reverse the dismissal of Counts II, IV, and V and affirm the dismissal of Count III.
AFFIRMED in part; REVERSED in part, and REMANDED.
GUNTHER and GROSS, JJ., concur.
NOTES
[1] No salesman shall collect any money in connection with any real estate brokerage transaction, whether as a commission, deposit, payment, rental, or otherwise, except in the name of the employer and with the express consent of the employer; and no real estate salesman, whether the holder of a valid and current license or not, shall commence or maintain any action for a commission or compensation in connection with a real estate brokerage transaction against any person except a person registered as his employer at the time the salesman performed the act or rendered the service for which the commission or compensation is due:
[2] (c) "Broker" means a person who, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraises, auctions, sells, exchanges, buys, rents, or offers, attempts or agrees to appraise, auction, or negotiate the sale, exchange, purchase, or rental of business enterprises or business opportunities or any real property or any interest in or concerning the same, including mineral rights or leases, or who advertises or holds out to the public by any oral or printed solicitation or representation that he is engaged in the business of appraising, auctioning, buying, selling, exchanging, leasing, or renting business enterprises or business opportunities or real property of others or interests therein, including mineral rights, or who takes any part in the procuring of sellers, purchasers, lessors, or lessees of business enterprises or business opportunities or the real property of another, or leases, or interest therein, including mineral rights, or who directs or assists in the procuring of prospects or in the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who receives, expects, or is promised any compensation or valuable consideration, directly or indirectly therefor....

(d) "Salesman" means a person who performs any act specified in the definition of "broker," but who performs such act under the direction, control, or management of another person.