LEWIS, J.
The opinion issued herein on September 6, 2001, is withdrawn, and the following is substituted in its place.
We have for review Harris v. Schickedanz Bros.-Riviera, Ltd., 746 So.2d 1152 (Fla. 4th DCA 1999), which is in apparent conflict with Alligood v. Florida Real Estate Commission, 156 So.2d 705 (Fla. 2d DCA 1963). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
The sole issue we address here is whether a cause of action based upon a contract for certain marketing budget oversight services in connection with real estate which contains a provision for an incentive bonus based on maintaining marketing expenses below a certain percentage of gross real estate sales is barred by section 475.42(l)(d), Florida Statutes (1993), as a prohibited action for a commission in connection with a real estate brokerage transaction. In this case, Harris entered into a written contract with Schickedanz Bros.-Riviera Ltd. (“Riviera”) to provide certain services related to real estate. Included among these were real estate marketing services including “preparing budgets for advertising, creating advertisements, and soliciting bids for the furnishing of model homes.” 746 So.2d at *609 1153.[1] The contract contained, in pertinent part, a bonus incentive provision whereby Harris would receive a bonus commission if he kept marketing expenses below a certain percentage of gross sales. Id.
After rendering services, Harris and his company, Real Estate Marketing and Consulting, Inc. (“REMAC”), filed this action against Riviera, Schickedanz Bros.-Palm Beach, Ltd. (“Palm Beach”), and Schicke-danz Enterprises, Inc., Riviera’s and Palm Beach’s corporate general partner (collectively, “Schickedanz”). In that part of the amended complaint relevant to the issue which implicates our jurisdiction here,[2] Harris sought the recovery of monies allegedly owed pursuant to the bonus incentive provision. Schickedanz claimed that the action was barred, inter alia, because Harris was a “real estate broker or salesman” within the meaning of section 475.42(l)(d), Florida Statutes (1993), which prohibits such a person from maintaining an action for a commission in connection with a real estate brokerage transaction. The trial court agreed. 746 So.2d at 1154.
The Fourth District reversed as to count II, concluding that the “services under the Bonus Incentive Provision for which Harris alleges he is entitled to payment are not real estate sales or brokerage services as defined in sections 475.01(l)(c) & (d), Florida Statutes (1993).” Id. In so doing, it reasoned:
In Count II for breach of contract Harris demands payment of his bonus incentive commission for any savings afforded Riviera by Harris. The trial court cited section 475.42(l)(d), Florida Statutes (1993), [Note 1] as its basis for dismissing this count. That section prohibits a real estate salesman from maintaining an action for a commission in connection with a real estate brokerage transaction. Section 475.01(c) and (d), Florida Statutes (1993) [Note 2] (now (a) and (k), respectively), set forth the definitions of a broker and a salesman. These definitions provide that one “who takes any part in the procuring of ... purchasers ... of ... the real property of another ...” is a real estate broker or salesman. Black’s Law Dictionary defines “procure” with respect to brokers as “to find or introduce; — said of a broker who obtains a customer. To bring the seller and buyer together so that the seller has an opportunity to sell.” BLACK’S LAW DICTIONARY 1208 (6th ed.1990). In working for a developer, it might be argued that any services Harris performs would ultimately result in the procuring of real estate purchasers. However, we find that the statutory definition of real estate broker or salesman is confined to one who direct *610 ly procures a purchaser not whose services incidentally result in a real estate brokerage transaction.
[Note 1] No salesman shall collect any money in connection with any real estate brokerage transaction, whether as a commission, deposit, payment, rental, or otherwise, except in the name of the employer and with the express consent of the employer; and no real estate salesman, whether the holder of a valid and current license or not, shall commence or maintain any action for a commission or compensation in connection with a real estate brokerage transaction against any person except a person registered as his employer at the time the salesman performed the act or rendered the service for which the commission or compensation is due.
[Note 2] (c) “Broker” means a person who, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraises, auctions, sells, exchanges, buys, rents, or offers, attempts or agrees to appraise, auction, or negotiate the sale, exchange, purchase, or rental of business enterprises or business opportunities or any real property or any interest in or concerning the same, including mineral rights or leases, or who advertises or holds out to the public by any oral or printed solicitation or representation that he is engaged in the business of appraising, auctioning, buying, selling, exchanging, leasing, or renting business enterprises or business opportunities or real property of others or interests therein, including mineral rights, or who takes any part in the procuring of sellers, purchasers, lessors, or lessees of business enterprises or business opportunities or the real property of another, or leases, or interest therein, including mineral rights, or who directs or assists in the procuring of prospects or in the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who receives, expects, or is promised any compensation or valuable consideration, directly or indirectly therefor....
746 So.2d at 1154 (emphasis supplied).
The Fourth District correctly concluded that the professional services to which the bonus incentive provision allegedly applied were not “real estate sales or brokerage services as defined in sections 475.01(l)(c) & (d),” id.; they were merely real estate marketing budget oversight services, with no brokerage component.[3] On that basis, Schickedanz is clearly distinguishable from Alligood. However, the principle of law as so broadly stated in Schickedanz — although not ultimately dispositive in the Fourth District’s decision — that a real estate broker or salesman is only one who “directly procures a purchaser” of real estate — is, in our view, in direct conflict with the principles established in Alligood.
In Alligood, the plaintiff was a telephone solicitor, employed by an owner of land in Collier County, Florida. She was responsible for calling persons and inviting them to visit Naples, Florida, at the landowner’s expense. During these conversations, she gave no pertinent details regarding the land being offered for sale, stating only that “the cost of the trip is borne by Gulf American Land Corporation, developers of Golden Gate Estates, which is near Naples, Florida.”
The plaintiff provided the names and addresses of persons who were successful *611 ly solicited to Gulf American Land Corporation, which then transported the solicited persons to its property and exposed them to a land sales program. While the solicited persons were under no obligation to purchase any property, they were “each considered by the company to be prospective purchasers of lands and, in fact, some of said persons [did] purchase lands from the company.” The plaintiffs duties were found to be “an integral part of the company’s method of selling its , lands.” 156 So.2d at 706. The plaintiff was paid not only an hourly rate for this service, but also “$3.00 for every person, or ‘buying unit’ whom she successfully solicited] to visit the area of said lands.” Id. Both the trial court and the Second District found this fee structure to be important:
The “bonus” of $3.00 for each prospect the plaintiff produced is a material factor in this determination. This element takes the job out of the classification of simple clerical employment and indicates the importance of the salesmanship element. True, she makes no direct effort at sales but like the circus “drummer” she gets them in the tent for the show.
The ultimate consideration is that these prospects who are the object of extensive exposure to the sales program at some considerable expense are those determined by the efforts of the plaintiff to be at least interested in the project. She certainly is taking part in the procuring of prospective customers.
Id. at 707 (emphasis supplied).
Although the plaintiff in Alligood did not make a “direct effort at sales,” and did not directly procure purchasers, she — unlike the plaintiff in Schickedanz, when acting in the capacity of overseeing the budget for marketing expenditures applicable to the Schickedanz property, as alleged in count II of the second amended complaint — did have direct contact with potential buyers, and played an active part in the procurement of identified prospective customers. Id. Therefore, the plaintiff in Alligood was correctly deemed to be a real estate broker or salesman. Cf. Florida Real Estate Commission v. McGregor, 268 So.2d 529, 580 (Fla.1972) (holding that the statutory definition of real estate broker or salesman applied to employees of a company engaged in purchasing and servicing mortgages on real estate who devoted “fifteen per cent of their time getting purchasers for the homes Mid State has acquired by foreclosure or deed”). In engaging in the activities alleged in count II of his second amended complaint, Harris, in contrast, merely provided oversight of the marketing budget applicable to the Schickedanz properties under the contract involved here. The fact that a fee incentive was tied to keeping marketing expenses below a certain percentage of real estate sales did not transform those services into brokerage services. It is the nature of the services rendered, rather than a characterization of whether purchasers of real property are directly or indirectly procured by the services, which distinguishes Schickedanz from Alligood.
Based upon the foregoing, we approve the decision and result of the Fourth District in Schickedanz to the extent that it is consistent with this opinion, disapproving only that portion of the decision which provides that “the statutory definition of real estate broker or salesman is confined to one who directly procures a purchaser not whose services incidentally result in real estate brokerage transaction.”
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, and QUINCE, JJ., concur. PARIENTE, J., recused.

. The Fourth District’s opinion reflects that, after this contract was terminated, Riviera allegedly "reaffirmed the original contract provision for an incentive bonus and memorialized it by continuing to give Harris printouts of total marketing expenditures as required by the original contract provision.” 746 So.2d at 1153.

. This opinion addresses only the Fourth District's ruling with respect to whether the trial court erred in dismissing Count II of the second amended complaint as barred by section 475.42(l)(d), Florida Statutes. In disapproving only that portion of the Fourth District’s decision which provides that “the statutory definition of real estate broker or salesman is confined to one who directly procures a purchaser not whose services incidentally result in real estate brokerage transaction,” Id. at 1154, our opinion is strictly limited to that aspect of the decision, and has no impact on the Fourth District’s result or disposition of any other matter addressed therein. We decline to address the other issue raised by Schickedanz because it was not the basis for our conflict jurisdiction.

. As the Fourth District aptly observed, "Overseeing the marketing expenses of a real estate development in order to save the developer money is also not enumerated in the statute.” 746 So.2d at 1154.